## STATE v. ROBERT MEADER.

*Perjury.* *Effect of illegal Evidence though charged out of the case.*

1. In a justice trial, the respondent being defendant, the question was the ownership of a certain sled, and the fact whether he had painted it, to disguise it, bore directly upon the issue. Knowingly swearing falsely that he did not paint it was perjury.

2. The admission of illegal evidence, if objected to, though under an offer of connecting it with other proof that would render it competent, and, though charged out of the case by the court, is a cause for setting aside a verdict, unless the court is able to say affirmatively that it worked no injury to the adverse party.

INDICTMENT for perjury. Trial by jury ; plea, not guilty ; verdict guilty ; at the June Term, 1881, Caledonia County, Ross, J., presiding.

It was claimed that the respondent committed perjury at a justice trial, in which one Chase and wife were plaintiffs, and he defendant. The evidence on the part of the State tended to show that Meader had an old traverse sled, and that before this trial he painted it so as to imitate the sled Chase had lost ; that soon after it was lost on one Sunday morning, the forward part of a traverse sled was suspended on the sign-post of the old hotel at Danville ; that this sled belonged to Mrs. Chase ; that after dark Meader took it down and carried it into the hotel occupied by himself ; that at the justice trial Meader was a witness, and produced a sled in court, and testified that the sled he produced in court was the same identical sled he took down from the sign-post ; and that it was his own sled, and that it was then in the same condition as it was when he took it down.

The evidence tended to show that the sled produced by Meader in court had been recently painted, and not then dry ; and had only two beams, and was a hind traverse, and was fixed up to imitate Chase's sled, or the one that was on the sign-post.

The State produced one Frank Burdick, who testified, against the objection of the respondent, substantially as follows : " Cannot tell how long the sled had been painted ; it was new paint. I mixed some paint for Edwin Taylor ; George Taylor, his son, came and got the paint and paid for it. Mixed a small quantity. Taylor came to me Saturday night for it. He got it Sunday about half past eleven o'clock. Mixed white lead, prussian blue, turpentine, japan and a little oil. Put in some turpentine, not much japan. Could not say how soon it would dry. When he got the paint he went on to the opposite side of the street. My shop is in the building where Meader lives. Color of sled light blue. Think not same shade as sold."

There was no evidence in the case tending to show that the respondent, or any one for him, had anything to do with this paint, or that it was used on this sled. But there was evidence tending to show Taylor got it and used it for his own use. When this ev-

idence was offered and admitted, the prosecution stated that it expected to show that the respondent used this paint to paint the sled, by George Taylor, who was summoned as a witness. George Taylor was taken sick and not able to be present to testify, and so this testimony was not connected with the respondent.

The other facts are sufficiently stated in the opinion of the court.

*J. P. Lamson*, for the respondent, cited 32 Vt. 491, 814 ; 30 Vt. 352 ; 16 Vt. 230 ; 13 Johns. 350 ; 15 Johns. 239.

*Henry C. Bates*, State's attorney (and *Harry Blodgett* with him), for the State, cited 33 Vt. 492 ; 52 Vt. 33 ; Green. Ev. 2, s. 47 ; 37 Vt. 122 ; 30 Vt. 559 ; 42 Vt. 152 ; Russell on Cr. 2, s. 1014 ; Black. Com. 42, 137 ; 44 Ala. 81.

The opinion of the court was delivered by

POWERS, J. Mrs. Chase, in the action tried before Justice Cook, sought to recover damages for the conversion of a sled by the respondent to his own use. The only sled that she claimed as her property, was the one suspended from the sign-post opposite the old hotel where the respondent lived, and which sled, the respondent conceded he took down from said sign-post. Both parties claimed title to this sled ; and the indictment charges that among other things the respondent testified, in the action aforesaid, falsely upon this question of his title to the sled.

The respondent requested the court " to hold and charge that it was necessary for the State to prove and establish beyond a reasonable doubt, that the sled suspended on the sign-post was the property of Chase, to constitute perjury." The court refused so to hold.

The assignment of perjury on which a conviction is asked, must be in a fact, or state of facts, principal or subsidiary, which are material to the issue, in a judicial inquiry. The principal, material fact in the action before Justice Cook, as the parties made their case, was whether the sled suspended from the sign-post was the property of Mrs. Chase or the respondent. If Mrs. Chase failed

to show title to that sled, she failed in the action. Any fact offered in evidence, therefore, tending to show title to the sled in the respondent, bore directly upon the issue on trial. And any evidence tending to *weaken* the respondent's claim of title, bore upon the issue and was material. If the respondent had used any device to destroy the means of identification of the sled, it was evidence tending to show that the respondent did not regard his title as unimpeachable, or that he needed to destroy the chances of Mrs. Chase in establishing her title. Evidence, therefore, that the sled had been newly painted by the respondent, had a direct bearing upon the disputed question of ownership, and was thus material to the issue. False swearing that goes to a point, the existence of which affects the question in controversy, is perjury.

The respondent's request limited the right to convict of perjury to the single question of false testimony respecting the ownership of the sled suspended from the sign-post. As the court remarked in refusing to answer the request, a case might be stated where the proposition embodied in the request would be sound. If the only question before the jury was whether the respondent had testified falsely respecting his *title* to that sled, it would be necessary for the State to prove the testimony false, and this would necessitate proof beyond a reasonable doubt that the respondent did *not own* the sled.

But the respondent may have testified falsely upon the subsidiary question respecting the *paintiny* of the sled, and if so, the mischief of false testimony, as it tends to obstruct public justice, would follow. Hence the request circumscribed the State within too narrow limits, and was rightly refused. As already said, the question whether the respondent painted the sled was material. The indictment charged it to be so, and it was made so in the evidence as the trial in the case proceeded.

To show that the respondent did paint the sled, the State offered to show by Burdick that he mixed some paint for Taylor on Sunday, the day the sled was found suspended from the sign-post, the State's attorney informing the court that he expected to prove by Taylor that this paint was used upon the sled. Under this offer and against the objection of the respondent, the evidence

was admitted. The court, however, told the jury that this evidence would go for nothing unless it was connected with the respondent. Taylor was not used as a witness, and thus no direct agency of the respondent in the use of this paint was shown.

Any evidence tending to show that the respondent had disguised the sled with paint, would obviously prejudice the respondent's case. The sled itself was evidence on the question of ownership. The State sought to prove its ownership in Mrs. Chase ; and any destruction of evidence, or impediments placed by the respondent in the way of its identification, would raise a presumption against him. *Omnia praesumuntur contra spoliatorem.* The new paint on the sled, not explained by the respondent, getting the paint at Burdick's on Sunday, so near the time when the sled was taken by the respondent into his possession, and the other circumstances connected therewith, furnish a basis for unfavorable inferences in the minds of the jury. That Burdick mixed the paint that was used upon the sled was the theory of the State, as is shown by the offer of his evidence.

It is an elementary principle that illegal evidence shall not be weighed by the jury. This rule is of the highest significance in a criminal case. Oftentimes evidence, standing alone, when offered is clearly inadmissible, and requires the aid of supplementary proof to be made competent. The convenience of the party or the exigencies of the case, may render it eminently proper for the court to allow it to come in under an assurance that the necessary supplementary proof shall be supplied. But in all cases it is obvious that improper evidence, however it gets into the case, and with whatever motive it may be offered, is liable to work mischief to the adverse party. The motive with which it is offered only goes to the good faith of counsel ; it does not change the character of the evidence itself. The court may attempt to destroy its mischievous effect, by instructing the jury to ignore it ; but there is no certainty that the attempt will be successful.

Accordingly, it is now the settled law in this State, that illegal evidence, if objected to, though admitted under an offer to so connect it with other proofs as to make it competent, will vitiate a verdict for the party offering it, if the proposed connection is not

established, unless the court is able to say affirmatively, that such evidence worked no injury to the adverse party. It is not apparent how any embarrassment can arise in the trial of cases under this rule. The party offering such evidence is simply compelled to take the risk of the experiment. If he fails, he, not his adversary, should be the loser. He has no more right to hold a verdict obtained by such evidence when offered in good faith, than one, when he offers the evidence in bad faith. The rights of the *adversary* are imperilled to the same extent in either case, and *these* are the rights calling for protection. The rule has a tendency to discourage bad faith in parties, in their offers of evidence, as they understand that such evidence cannot ultimately aid them. Ch. J. PIERPOINT laid down this rule in *C. & P. R. R. Co.* v. *Baxter*, 32 Vt. 805. He reiterated it in *Boyd & Wife* v. *Readsboro*, Windham Co. Sup. Court, February Term, 1879, unreported, where the court admitted improper evidence, under objection, and, afterwards, of its own motion, changed the ruling and instructed the jury to disregard the evidence. He again reiterated the rule in *State* v. *Hammond*, Windsor Co. Sup. Court, February Term, 1879, a case not reported.

In *Stirling* v. *Stirling*, 41 Vt. 80, the late Judge PECK, speaking of this rule with approval, and of the difficulty of getting rid of the impression left by such evidence on the minds of the jury, says : " It has already had its influence on the minds of the jury, and it would be extremely improbable, if not impossible, that the jury could know what their conviction would have been on the material fact, had this evidence not been in the case."

POLAND, Ch. J., in *Wood* v. *Willard*, 36 Vt. 82, approved the rule as laid down in the case in the 32d Vt. *supra*, and said : " It is not enough to allow us to disregard the introduction of improper evidence, that it might not have been injurious to the party against whom it was given ; we must be able to say that it could not. For this reason we think the judgment must be reversed."

To the same effect is the opinion of REDFIELD, J., in *Hodge* v. *Bennington*, 43 Vt. 450.

The late lamented Chief Justice, whose wisdom, as Lamartine said of Mirabeau, was " the infallibility of good sense," in the

case of *Boyd et ux.* v. *Readsboro, supra,* in speaking of the futility of any attempt to charge improper evidence out of the case, made use of one of those simple illustrations, oftentimes equivalent to actual demonstration, for which he was so much noted. He said, the school boy uses his sponge to rub out the pencil marks on his slate. He eventually discovers that at some time—he never can tell when—his pencil has *scratched,* and learns to his sorrow, that the ugly evidence of the fact, however vigorously he may apply his sponge, cannot be removed. The question in all cases, is not whether the court, if trying the case, would disregard the obnoxious evidence, but whether the court is *assured* that the jury has done so.

Looking at Burdick's testimony in its relation to the other facts in evidence, and as it tended to support the theory of the prosecution, and the mishap that deprived the State of the evidence of Taylor,—the tenor of whose testimony had been disclosed in open court —it is more than probable, that the disputed question whether the sled had been newly painted, was affected by the circumstances detailed by Burdick. The respondent's exception therefore to this testimony is sustained.

The sentence is vacated, the judgment reversed, and the case remanded for a new trial.