[No. 14423.  Department One.  December 27, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v.
ROSE ALBUTT, *Appellant*.[1]

CRIMINAL LAW—INSANITY—EVIDENCE—TRUTH OF COMMUNICATION.
Upon an issue as to insanity brought about when the accused in good
faith believed information which rendered her mentally irrespon-
sible, it is error to admit evidence of the falsity of the information,
since its truth or falsity is immaterial.

SAME.  In such a case, the fact that the accused testified that
she still believed in the truth of the information, is not a sufficient
excuse for the introduction of a mass of incompetent testimony as
to its falsity.

SAME—APPEAL—REVIEW—CURE BY INSTRUCTION.  Error in the ad-
mission of evidence as to the truth or falsity of information causing
accused's insanity is not cured by an instruction that the only issue
was whether the information was given to the accused and whether
she had probable cause to believe it; since the effect of the instruc-
tion was doubtful and the doubt must be resolved in favor of the
accused.

ASSAULT AND BATTERY—DEGREES—HOMICIDE—QUESTION FOR JURY.
Where the accused pointed a pistol at and threatened the prosecuting
witness, and the pistol was fired during a struggle, and the defense
was insanity, both first and second degrees of assault are properly
submitted to the jury, under the statute in which the first degree
assault requires a specific intent to kill a human being, and in
which second degree assault is an assault with a weapon likely to
produce bodily harm regardless of any specific intent.

Appeal from a judgment of the superior court for Pierce
county, Card, J., entered January 25, 1917, upon a trial and
conviction of assault in the second degree.  Reversed.

*E. D. Hodge*, for appellant.
*Fred G. Remann* and *J. W. Selden*, for respondent.

WEBSTER, J.—The prosecuting attorney filed an informa-
tion in the superior court for Pierce county charging the de-

Reported in 169 Pac. 584.

fendant with assault in the first degree, the acts constituting the offense being set forth in the following language:

"That the said Mrs. Rose Albutt, in the county of Pierce, in the state of Washington, on or about the 22d day of November, nineteen hundred and sixteen, then and there being, unlawfully and feloniously and with intent to kill a human being, to wit, Mrs. Gertrude L. Robertson, did then and there assault said Mrs. Gertrude L. Robertson with a fire arm, to wit, with a revolver loaded with powder and ball, and did then and there with said revolver shoot at and toward the person and body of her, the said Mrs. Gertrude L. Robertson, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Washington."

To this information the defendant pleaded: (1) Not guilty; (2) Not guilty, by reason of mental irresponsibility. The jury returned a verdict of guilty of assault in the second degree. From the judgment entered upon the verdict, the defendant prosecutes this appeal. The facts necessary to an understanding of the questions involved are substantially these.

The appellant resides at Jovita, Washington. Mrs. Robertson resides in the city of Tacoma, and maintains a suite of offices in the Fidelity building. For some time prior to November 22, 1916, the appellant's daughter, a child of the age of fourteen years, resided with Mrs. Robertson, assisting in the light housework to compensate for her board and room while attending school. The testimony of appellant and her witnesses tended to show that appellant's daughter, about three weeks prior to the commission of the acts charged in the information, came to her mother's home at Jovita and told appellant that, on the previous night, she had awakened and discovered Mrs. Robertson and a young man named Boyd in her room; that Mrs. Robertson was standing near the door, and Boyd was lying beside her on the bed; that she tried to call and protect herself, but could not do so, and was wholly unable to repel the advances of Boyd; that, about this time,

she became unconscious and did not know what further happened to her.

Appellant was greatly worried and distressed about the story, and later went to the office of Mrs. Robertson and demanded an explanation. Boyd was called in and the episode was quite thoroughly discussed among them. Appellant was not satisfied with the explanations, and shortly thereafter took the daughter from the home of Mrs. Robertson. Becoming further alarmed over the child's condition, she subsequently consulted the probation officer and the prosecuting attorney for Pierce county. Not contented with their plans and advice, she purchased a revolver and some cartridges, went to Mrs. Robertson's office and, after making some ugly charges against her, pointed the revolver and threatened to take her life. Mrs. Robertson became frightened and ran along the hallway into the dental parlors of Doctor Brown. The appellant followed, and when they reached the operating room, Mrs. Robertson turned and seized the appellant in an effort to take the revolver from her. During the struggle, one shot was fired, the ball passing through the dentist's chair and lodging in the floor.

The theory of the defense is that the story told the mother by the daughter so preyed upon appellant's mind—she being firmly convinced that her daughter had been mistreated by Mrs. Robertson and Mr. Boyd—that she became mentally unbalanced and was temporarily irresponsible for her acts.

During the progress of the trial, the court, over the repeated objections of the appellant, permitted the state to introduce in rebuttal, testimony tending to show that the story told by the child to her mother was utterly false and that she had in no manner been harmed by Mrs. Robertson or Mr. Boyd. This ruling is assigned as error.

It is elementary that, where a plea of insanity is sought to be sustained by showing that the accused had been informed, and in good faith believed, that an assault had been made upon a member of his family, and the effect of the com-

munication was such as to render the accused mentally irresponsible at the time of the commission of the acts charged, the independent fact of the truth or falsity of the information is wholly immaterial.

Under such circumstances, the transaction must be surveyed from his viewpoint. If he, in good faith, believed the communication to be true, to him it became a reality. The mental condition of the accused, when the act charged was committed, is the sole issue. As the defendant's state of mind could not possibly have been influenced by facts of which he had no knowledge, clearly evidence of the existence or nonexistence of such facts would shed no light upon the subject. *State v. Kirby*, 62 Kan. 436, 63 Pac. 752; *Jones v. State*, 33 Tex. Cr. 492, 26 S. W. 1082, 47 Am. St. 46; *Massie v. Commonwealth*, 16 Ky. Law 790, 29 S. W. 871; *State v. Green*, 152 N. C. 835, 68 S. E. 16; *State v. Murray*, 83 Kan. 148, 110 Pac. 103; *People v. Webster*, 139 N. Y. 73, 34 N. E. 730; *People v. Wood*, 126 N. Y. 249, 27 N. E. 362; Michie, Homicide, p. 926; 6 Ency. Evidence, p. 745.

The rule is not seriously challenged, but the state seeks to avoid its effect by contending that the defendant opened the door to the admission of the objectionable evidence, basing its claim upon the following question and answer appearing in the testimony of Mrs. Healey, a witness called in appellant's behalf:

"Q. What is your opinion at this time with regard to the truth or falsity of that story, Mrs. Healey? A. I have had no reason to change my mind."

The story referred to in the question was the one related to defendant by her daughter, and the witness had just answered that, upon the appellant's statement to her of its details prior to the commission of the alleged offense, she was inclined to give credence to it.

If this were all, it would seem a meager excuse for the introduction of a mass of wholly incompetent evidence against the accused. While we appreciate the right of opposing

counsel to briskly enter when the bars are thrown down, yet, in this case, we believe the state's counsel abused the privilege by impatiently leaping the barrier.

Immediately following the answer just quoted, the prosecuting attorney interposed an objection that the evidence was clearly incompetent and improper, which objection was promptly sustained by the court. The matter was not pursued further as a part of the defendant's case. The effect of the ruling was to strike the evidence from the record, and if counsel desired a more specific charge withdrawing it from the consideration of the jury, he should have so requested. Instead of pursuing such course, the state proved in rebuttal, by an expert witness, that children of the age of appellant's daughter very frequently suffered from hallucinations along the line indicated in her communication to her mother, and in addition, was permitted to prove, both by Mrs. Robertson and Mr. Boyd, that the latter had never remained at the house of the former later than 9:30 o'clock in the evening during the entire time appellant's daughter was a member of the household. But not content with this, these witnesses were asked: "Is there any truth whatsoever in the story the girl has told?" To which Mrs. Robertson answered: "None whatever," while Boyd responded: "There is positively no truth in the matter whatever."

The child did not testify, and the all inclusive question of whether there was any truth in the story told by her, left the witnesses free to put their own construction upon what she had communicated to her mother. Plainly no charge of perjury could be predicated upon such evidence. Not only was the substance of the testimony clearly incompetent, but the manner of its introduction was highly objectionable.

It is urged in support of the judgment, however, that, assuming the evidence to be inadmissible, the error was cured by the instructions. Relating to this point, the court charged as follows:

9—99 WASH.

"You are further instructed that the truth or falsity of the child's story to the defendant is not an element to be considered by you in determining your verdict, but the only element with reference to the child's story for your consideration is whether or not this story was told to the defendant, and whether the defendant had probable cause to believe it, and did believe the same."

This instruction is general in its terms and does not undertake to specify the objectionable evidence which brought into the case the immaterial and collateral issue, nor was the jury directed to disregard it in arriving at their verdict. It was still open to the jury to resort to the improper evidence as shedding light upon the question of whether the defendant had probable cause to believe the story told by her daughter. The jury might well have argued that, because children of the age of appellant's daughter are sometimes afflicted with hallucinations, the story told was purely imaginary, or, in view of the denials by Mrs. Robertson and Mr. Boyd, it was utterly false, and therefore defendant did not have "probable cause" to believe and act upon the same.

We can conceive of no other purpose the state could have had in introducing the irrelevant testimony, hence its effect was just as injurious after the instruction was given as before.

When incompetent evidence is erroneously permitted to go to a jury, and an attempt is subsequently made to withdraw it from their consideration, the direction of the court should be plain and specific—if the harm done is to be avoided. We must not be unmindful of the fact that instructions are addressed to a jury of laymen, not to trained legal minds. The question is not whether the court would have disregarded the offending testimony, but is it certain that the jury has done so. As was aptly observed by Chief Justice Pierpoint, of whom it has been said "his wisdom was the infallibility of good sense:"

"The school boy uses his sponge to rub out the pencil marks on his slate. He eventually discovers that at some time—he

can never tell when—his pencil has *scratched,* and learns to his sorrow, that the ugly evidence of the fact, however vigorously he may apply the sponge, cannot be removed." *State v. Meader,* 54 Vt. 126, 132.

Moreover, in this case there was substantial evidence tending to support the defendant's plea of mental irresponsibility, which, if believed by the jury, would have warranted a verdict in her favor. In such cases, the courts should be very cautious in saying that clearly incompetent testimony was not prejudicial. While ordinarily an error in the admission of evidence is remedied by an instruction directing the jury to disregard it, the rule is by no means of universal application. Each case must rest upon its own facts, and in some instances the error may be so serious that an instruction, no matter how framed, will not avoid the mischief.

A careful examination of the entire record in this case leaves us in doubt as to whether the error was cured or the impression removed. This being true, the issue must be resolved in favor of the accused. *State v. Nist,* 66 Wash. 55, 118 Pac. 920, Ann. Cas. 1913C 409; *State v. Thompson,* 14 Wash. 285, 44 Pac. 533; *Massie v. Commonwealth, supra.*

Since the case will have to be retried, we deem it advisable to pass upon the insistence of counsel that there was no evidence justifying a verdict of assault in the second degree, and that the court erred in submitting that degree of the offense to the jury. Under the facts disclosed as applied to our statutes, the distinction between assault in the first and second degrees lies in the question of intent. In the former, in order to constitute the offense, the assault must be made with the specific intent to kill a human being; while in the latter, it is sufficient if the assault be made with an instrument or weapon likely to produce bodily harm, no specific design being necessary. The court, therefore, very properly submitted to the jury both degrees of the crime. *State v. Reynolds,* 94 Wash. 270, 162 Pac. 358, relied upon by ap-

pellant, is not contrary to these views. In that case, the defendant was charged with assault in the second degree, and convicted of assault in the third degree. The attack was made with a pistol. Under our statute, where an assault is made with a weapon or instrument likely to produce bodily harm, the offense is assault in the second degree, even though no grievous bodily harm is inflicted. The appellant admitted that he shot the complaining witness, but claimed that he was acting in self-defense; consequently we held that it was error to submit to the jury assault in the third degree. Under the facts in that case, the accused was guilty of assault in the second degree, or not guilty of any offense.

Some additional assignments of error are urged, but as the questions are not important and probably will not recur upon a retrial of the cause, we shall not burden this opinion by discussing them.

For the reasons indicated, the judgment will be reversed, and the cause remanded for a new trial.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.