[No. 18423. Department Two. October 10, 1924.]

# JACK REGENVETTER, *Respondent*, v. PUGET BALL, *Appellant*.[1]

HUSBAND AND WIFE (120)—ALIENATION OF AFFECTIONS—EVIDENCE
—SUFFICIENCY. The issue as to the alienation of the affections of a
wife is for the jury where there was evidence that, until the de-
fendant appeared, there were no unusual differences between the
husband and wife, that defendant paid such marked attentions to
the wife as to make it a matter of general comment, and refused
to desist upon request, but continued thereon until the wife be-
came dissatisfied and left her husband; notwithstanding there was
some evidence of other grounds for the separation.

SAME (120) — ALIENATION OF AFFECTIONS — EVIDENCE — ADMISSI-
BILITY. In an action for alienation of affections, in which it appears
that defendant had been ordered not to visit plaintiff's home, evi-
dence is admissible tending to show a clandestine meeting be-
tween the wife and defendant at plaintiff's home, notwithstanding
there was no claim of immoral conduct.

WITNESSES (73)—CROSS-EXAMINATION—REPETITION. In an action
for alienation of affections, in which it appeared that, through a
suit for a divorce, plaintiff had lost the comfort and society of his
children, it is proper to sustain an objection to the question as to
what he had done to lose their custody, where he had already
answered that he had done nothing; especially where defendant
was allowed great latitude in showing plaintiff's conduct toward his
wife and children.

HUSBAND AND WIFE (120)—ALIENATION OF AFFECTIONS—EVIDENCE
—ISSUES AND PROOF—PLEADINGS IN OTHER ACTION. In an action for
alienation of affections, the pleadings, decree, and supreme court
opinion in a divorce action, indicating the reasons for awarding the
wife a decree and the custody of the children, are not admissible to
prove the facts at issue, but only as admissions against interest and
the fact as to the custody of the children.

SAME (120, 121)—ALIENATION OF AFFECTIONS—DAMAGES—MITI-
GATION—EVIDENCE. In an action for alienation of affections, it is
not error to exclude evidence of the associations of the plaintiff
with another woman after the separation with his wife, where it
was not offered as admissible in mitigation of damages, but for an-
other and an inadmissible purpose.

[1]Reported in 229 Pac. 321.

TRIAL (101)—INSTRUCTIONS—ALREADY GIVEN. It is not error to refuse an instruction in the language requested, where other proper instructions fully stated the legal questions involved and carefully guarded all the rights of appellant.

SAME (52)—ARGUMENT OF COUNSEL—ERROR CURED BY INSTRUCTIONS. Improper remarks of counsel in argument to the jury are cured where the court, on request, plainly instructed the jury, in the form requested by appellant, to disregard the remarks and the jury must have understood the instructions.

EVIDENCE (14) — JUDICIAL NOTICE — JUDICIAL PROCEEDINGS AND RECORDS. On a motion for a new trial on account of an excessive verdict, the trial judge, in exercising his discretion, takes judicial notice of a verdict rendered in the same case on a former trial, which was larger in amount; and on appeal, the supreme court may judicially notice what the trial court noticed, on the fact being certified to the supreme court.

HUSBAND AND WIFE (121)—ALIENATION OF AFFECTIONS—DAMAGES —EXCESSIVE VERDICT. A verdict of $27,000 for alienation of affections, reduced by the trial judge to $20,000, will not be set aside as excessive, especially where a jury on a former trial awarded a verdict of $30,000.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered August 28, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action for alienation of affections. Affirmed.

*Wilbra Coleman, R. V. Welts,* and *Byers & Byers,* for appellant.

*C. J. Henderson* and *Thomas Smith,* for respondent.

FULLERTON, J.—The plaintiff, Jack Regenvetter, brought this action against the defendant, Puget Ball, to recover in damages for the alienation of his wife's affections. At the trial in the court below, the jury returned a verdict in the plaintiff's favor for the sum of $27,500. A motion for a new trial was interposed on the various statutory grounds, among which was the ground of excessive damages appearing to have been given under the influence of passion and prejudice.

The trial court overruled the motion on all of the grounds save the one specifically mentioned. As to this he offered the plaintiff the option of accepting a judgment for $20,000 or of submitting to a new trial. The plaintiff accepted the first branch of the option, and judgment was entered in his favor for the sum in which the recovery was limited by the court. From this judgment, the defendant appeals.

The defendant first complains that the trial court erred in refusing to sustain his challenge to the sufficiency of the evidence. In noticing this objection, however, we think we need not review the evidence in detail. Outlining it in brief, the plaintiff's evidence tended to show that he married the woman whose affections are charged to have been alienated by the defendant in 1908. The woman was then a widow, having a daughter by her former marriage some four years of age. Within three years after the marriage, two daughters were born to them. The parties lived together with no unusual bickerings until the advent of the defendant upon the scene. The defendant first began to visit the plaintiff's home in the early part of the year 1920. After these visits had continued for a short time, the defendant induced the plaintiff and his wife to join the local grange. In the social gatherings of this body his attentions to the wife were marked, so much so indeed as to cause comment and criticism among other persons attending the gatherings, and among the plaintiff's neighbors generally. In preparation for these social gatherings, when the wife was among those making the preparations, the defendant would attend and assist. In the dances which usually wound up these gatherings, the defendant would dance repeatedly with the wife, rarely dancing with anyone else. The defendant arranged picnics, blackberrying parties, and other excursions of

like kind in which the plaintiff and his wife would be invited. On these excursions, also, the wife would be the only woman present to whom the defendant would show any marked attention. These attentions finally aroused the husband, and he sought out the defendant, requested him to cease his attentions, telling him in substance that he was breaking up his home. This request seems to have had no other effect on the defendant than to stop his visits to the home. He then sought other occasions to meet the wife. He would, through a young woman living at the house at which he was boarding, find out the social gatherings the wife attended, attend them himself, and then continue his attentions to her. He would meet her at places away from her home, sometimes by appointment, and take her riding in his automobile. It is true that on all of these occasions there were other persons present, but the defendant generally found some opportunity to converse and visit with her apart from and out of the hearing of the others. The plaintiff testifies that as these attentions continued, his wife's manner towards him gradually grew colder; that she first refused to occupy the same sleeping room with him, and finally permanently separated from him. When the wife finally left the plaintiff, she took up her residence at the home of her brother, a home which the brother had established through means furnished him by the defendant.

The plaintiff does not contend that the relations between the defendant and his wife were meretricious in a criminal sense, and the record discloses that there is testimony of other matters which seemingly would cause a sensitive woman to abandon him. He seems to have been rough and coarse in his mannerisms and conduct towards his wife. He would indulge in acts and jests towards her in the presence of others too indecent

here to repeat. But while it is argued that these were the causes of the coldness of the wife towards the plaintiff and were the causes of the final separation, we cannot so hold as matter of law. They were matters occurring throughout the married life of the parties, and, while at times they caused the wife to become highly indignant, she did not find them sufficient to cause coldness or separation until the appearance of the defendant, possibly concluding that the good qualities of the plaintiff (and the record clearly shows that he was not without such), outweighed the defects arising from the coarser side of his nature.

Counsel have called to our attention many cases brought to recover for alienation of affections where the courts have held the evidence insufficient to sustain the verdict returned by the jury. These we shall not review. While we do not question that they were in each instance correctly decided, in none of them do the facts shown even closely parallel the facts shown here. It is sufficient, therefore, to say that, in our opinion, the facts here presented on the question of the cause of the alienation of the wife's affection was for the jury, and that the trial court did not err in submitting the question to them.

Of the errors thought to require a new trial, the first relate to the admission and exclusion of evidence. It appears that, after the defendant had been ordered not to visit at the plaintiff's home, a social gathering was held in the neighborhood. The wife of the plaintiff, while invited to attend, did not do so, but stayed at home. The plaintiff attended with other persons, and testified that, on his return to his home at a late hour of the night, he started to light a kerosene lamp and found the chimney of the lamp so hot as to scorch his fingers; and that, on further examination, he found some fragments of an angel cake on the dining table and some

unwashed dishes, indicating that two persons had lunched at the table; that he also found an open window in the front room of the house, and tracks leading therefrom which indicated that some person had made a hasty departure. The tracks, he further stated, led through the yard into a pasture, that they had been made with shoes of a rather large size, and "that they compared right up with Mr. Ball's shoes." The defendant moved to strike the testimony on the ground that the evidence did not sufficiently connect him with the transaction. The court denied the motion, and its ruling is assigned as error.

The defendant argues in this court that this is the only evidence of a clandestine meeting shown in the record, that it indicated "possible wrongdoing or immoral conduct," and was highly prejudicial in its nature. But we think there was no error in the court's ruling. Had the question for the determination of the jury been whether the defendant was at the house of the plaintiff on the particular evening, the testimony, standing alone, would possibly not have been sufficient to support a finding that such was the fact. But this was not the question before the jury. They were trying the question whether the defendant had alienated the wife's affections, and this was but one of a long line of circumstances introduced to show the fact. Its probative force may not have been great, but it was sufficiently direct to be submitted to the jury along with the other circumstances shown. Furthermore, the evidence does not disclose that the wife was alone in the house on that evening. On the contrary, the inference is the other way. Not only was the stepdaughter before mentioned a part of the plaintiff's family, but the daughters of the parties were also residing at the home, none of whom attended the social

gathering mentioned with the plaintiff, and it was not shown that they were elsewhere on the occasion.

In his complaint, the plaintiff sets forth as one of the items of damage the fact that he had been deprived by the defendant's acts of the comfort and society of his children. It appeared that, subsequent to the separation, the husband sued for a divorce and the custody of the children, and that the trial court awarded him a divorce and gave him the custody of one child. It further appeared that, on appeal from this part of the decree, this court reversed the decree in so far as to award both children to the wife. *Regenvetter v. Regenvetter*, 124 Wash. 173, 213 Pac. 917. The plaintiff offered no evidence on this branch of the case other than what might be inferred from his testimony to the effect that, in the divorce decree, one of the daughters was awarded to him and the other to the mother, and that since that time the one awarded to him had been taken from him. On cross-examination, he was asked: "What was it, if anything, that you did, either to your wife or children, that caused both of your children to be taken away." To this question an objection was interposed and sustained. But we think there was no error in the ruling. The witness had theretofore answered a similar question to the effect that he had done nothing to cause his children to be taken from him, and the court could properly stop the examination on this general line on the ground that it was unnecessary repetition.

But the defendant says in his brief that he was not only prevented from showing by this witness, but by any other witness or in any other manner, that it was because of the plaintiff's own fault that he had been denied the society and custody of his children. No place in the record is pointed out to us, however where such

a denial was made, other than in the instance above cited, and our own researches have discovered none. On the contrary, we think the record shows directly the opposite. The court, as we read the record, gave to the defendant the utmost latitude in showing the plaintiff's conduct towards his wife and his children, and the privilege of showing any other circumstances which would in any degree indicate a reason for the separation from his wife and the subsequent loss of the custody and society of the children. That the defendant abundantly availed himself of the privilege, almost every page of the very voluminous record is a mute witness.

In this same connection the defendant offered in evidence the complaint and answer in the divorce action, the decree of the trial court entered therein and the opinion of this court modifying the decree. Of these documents the court admitted only the decree of the trial court; permitting it to be shown by evidence other than this court's opinion, the modification made by this court of the decree. Plainly, all that was material to the issue in hand was permitted to be shown. Pleadings in one action are competent evidence in another where the purpose is to contradict a party or his witness, but as evidence to prove the facts at issue they are not so. They were not offered in this instance for either of the permissible purposes, and no error arose from their rejection. So with the opinion of this court. The judgment entered on the direction of the court could have been properly introduced, since it showed that the plaintiff did not have the custody of either of his children; but the opinion of the court wherein it set forth the reasons for its judgment was not competent as evidence.

It is next complained that the court admitted evidence of the conduct of the defendant and his associa-

tions with the wife subsequent to the divorce decree and subsequent to the time the present action was instituted. But, again, the defendant has not referred us to the place in the record where such evidence was admitted, and we have not discovered from our own examination the admission of any such testimony, except in an instance or two where the acts were inseparably connected with other transactions permissible to be shown. It is true, one or two of the witnesses were indefinite as to the time the transaction occurred which they related, but as to these we do not find that there was an objection on this ground; and certainly there was no attempt on cross-examination to show the precise time of the occurrence of the transactions which the witnesses related.

The defendant offered to show associations of the plaintiff with a certain Mrs. ———, had subsequent to the entry of the decree of divorce. The trial court rejected the proffered evidence, and it is urged here that its exclusion was error because permissible in mitigation of damages. But as the record appears, we do not find reversible error in the ruling. The offer of the proofs as it is recorded gives no intimation of its purposes, and, if we may judge from the remarks of the trial judge in making his ruling, he had been given the impression that it was offered for an entirely different purpose than the purpose for which it is now claimed to be admissible; a purpose for which it was not error to exclude it. But conceding the offered evidence was admissible in mitigation of damages, it could have only a remote bearing on the question. The question presented differs from that presented in *Philips v. Thomas,* 70 Wash. 533, 127 Pac. 97, Ann Cas. 1914B 800, 42 L. R. A. (N. S.) 582, on which the defendant relies. That was an action brought by the wife against another woman for the alienation of the

husband's affections. The acts and conduct of the husband with women, not parties to the action, occurred at the time the wife claimed the defendant was alienating his affections, and were of such a nature as. to indicate that the husband then had but little affection for his wife. These are not the facts presented here. The jury, in this instance, were warranted in finding that the plaintiff's affection for his wife continued until it became evident that her affections were irretrievably alienated from him, and proofs that he thereafter conducted himself in such a manner as to indicate that his own affections had cooled, plainly could have but little weight even in mitigation of damages. We cannot, at least, hold that the rejection of the evidence requires a new trial.

The defendant requested the following instruction:

"The jury are instructed that no recovery can be had in this cause unless the alienation was caused by the acts done and the influence exerted by the defendant and unless you have so found by some of the causes alleged in the complaint he alienated the affections of plaintiff's wife."

The court did not give the instruction in the language requested, but charged that, if the jury found that the plaintiff was entitled to a verdict at their hands, in fixing the amount of the recovery they were entitled to "take into consideration all the facts and circumstances proven upon the trial." The defendant calls attention to the fact that the complaint in the action was verified and filed in May, 1922, and that the trial was had in June, 1923, and contends that the instruction requested was erroneously refused and the instruction given was erroneously given because there was a "vast amount of evidence given of things occurring" between the time the complaint was filed and the time of the trial, arguing, that, "In fact, all the loss

of society, of conjugal relations, or love he lost, or any humiliation or distress of mind for which they [the jury] rendered a verdict, may have been proven in their minds entirely by evidence of things taking place after the complaint was filed, which evidence was admitted on an entirely different theory and for a different purpose." But it is a sufficient answer to the objection to repeat what we have hereinbefore stated, namely, that we do not find that any such evidence was erroneously admitted. Nor do we find that the defendant has otherwise any cause of complaint against the court's instructions. The court, with painstaking care and in plain and concise language, instructed the jury as to the legal questions involved, and in them we find that all of the defendant's rights were carefully guarded. Plainly, it seems to us, the verdict could not have been the result of a want of sufficient instructions.

After the conclusion of the arguments, the defendant excepted to certain statements made by the plaintiff's counsel to the jury, and asked the court to instruct the jury to disregard them. One related to a purported conversation between the plaintiff and his wife as to the cause of her leaving him, another was to the effect that the plaintiff had avoided the military draft, and a third to the effect that the courts had decided that the plaintiff was an unfit person to have the care and custody of his children. The court complied with the request, giving to the jury this further instruction:

"Ladies and Gentlemen of the Jury: There is one feature regarding which the court failed to instruct you, and that is this: That if counsel, in their arguments, have stated anything which was not in the evidence, such statement should not be given any weight by you. The court is referring particularly to two statements, one indicating that there was some conversation between Mary Regenvetter and Jack Regen-

vetter as to the cause of her leaving. I instruct you that any statement of that kind should be disregarded because there is no evidence of that character. Another is that the court, or some court, has said that Jack Regenvetter was an unfit person to have the custody of his children. There is no such evidence before you and you should not give that statement any weight in considering your verdict. There is no reference to the defendant avoiding the draft. That also comes under the same head. There is no evidence of that character before you, and it should not be given any weight in arriving at your verdict.''

The defendant contends in this court that the argument was of such a prejudicial nature as not to be capable of cure by instructions, and argues that the size of the verdict is evidence that the harm done was not cured. But the court took that form to correct the error that the defendant requested it to take, and under any rule of practice it would seem that he is now precluded from complaining. Passing this, however, we think the error was sufficiently cured. The jury must be. credited with possessing at least average intelligence, and certainly any person with average intelligence must have understood from the court's very plain statements that the matters referred to were not in the evidence and had no place in the considerations of the jury. Moreover, it is to be presumed that the jury heeded the instructions, not that they disregarded them.

Finally, it is urged that the judgment must be reversed and a new trial awarded because of the excessiveness of the verdict. But before noticing the merits of the contention, another matter must be considered. This was the second trial of the action. On the former trial the jury returned a verdict against the defendant in the sum of $30,000. This verdict the judge presiding at the former trial set aside because he deemed

it excessive. The facts appear from the opinion of the trial judge filed in the action on the former trial which. the plaintiff has caused to be certified into this court. Because the facts do so appear, the defendant urges that we have no right to consider them, but must pass upon the objection as if it was a question of the first instance. But it is not our understanding that this is a correct statement of the rule. The court does not set aside a verdict on the ground of excessiveness as matter of right or as matter of law, but does so in the exercise of its sound discretion, a discretion it possesses to see that justice is done between the parties litigant. The order granting a new trial here entered was an order entered in the very cause on trial, and could be judicially noticed by the trial judge, and it is the rule that any matter occurring at the trial which the trial court may judicially notice, this court, on the appeal of the cause may also judicially notice. The manner of bringing the actual facts to this court is thus not very material. It is enough that it be made known with certainty what the facts are, and the record as presented in the present instance is sufficiently complete in this respect. It may be unnecessary to add that, since the granting of a new trial because of excessiveness of the verdict is a matter of discretion, the court may take into consideration in passing on the question all matters theretofore occurring in the cause which have a bearing upon it, and, certainly, that there has been a prior trial in which the jury found for the plaintiff, is a circumstance that may be so considered.

On the merits of the motion it is our conclusion that the plaintiff is entitled to have the judgment affirmed. The question of the amount of the recovery is solely for the jury. The court may not substitute its judgment for the judgment of the jury, however much it

may be dissatisfied with the verdict as returned. Its power in this respect is limited to granting another trial, or what is to the same effect, giving the plaintiff an option to accept a lesser sum than the verdict awards or submit to a new trial. But there must be a limitation to the exercise of this power, else it may result, because of the exhaustion of the plaintiff or of his resources, in the denial of any recovery at all. The tribunal the law appoints to measure the plaintiff's recovery has in this instance twice returned awards substantially in the same amount, and nothing in the record indicates that there would be a different result were the plaintiff to be compelled to resort to a third. It is our opinion that an injustice would be done the plaintiff if he is compelled to resort to another trial, and that the judgment should be affirmed. It is so ordered.

MAIN, C. J., MITCHELL, BRIDGES, and PEMBERTON, JJ., concur.