[No. 37433.    En Banc.    October 7, 1965.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS STANLEY
SULESKI, *Appellant.*\*

*Savage & Nuxoll,* for appellant.

*Philip H. Faris,* and *D. L. McMannis,* for respondent.

HAMILTON, J.—This case strikingly illustrates the incongruity of undertaking to test the legality of a search and the admissibility of seized evidence in the presence of a jury. The following sequence of events leads to this appeal.

On August 14, 1962, appellant (defendant), using his brother's name, obtained a prescription for dolophine (a

\*Reported in 406 P.2d 613.

narcotic drug) from a doctor in Palouse, Washington, claiming he was afflicted with trigeminal neuralgia. He forestalled an adequate physical examination by the doctor. The doctor became suspicious and, fearing that she had issued a prescription to a drug addict, notified the Palouse police of her suspicions and advised them of appellant's description and out-of-state automobile license number. Thereafter, appellant undertook to have the prescription filled in a Palouse pharmacy. The pharmacy did not have the drug in stock, and appellant proceeded to Pullman where he tried a second pharmacy, arriving there shortly after 6 p.m. The second pharmacist (who likewise did not have a supply of the prescribed drug) had, in the meantime, been notified by the Pullman police of the doctor's report and of appellant's description. In the course of his dealing with appellant, he observed that the prescription appeared to have been altered by an ink spot which obliterated the part of the prescription specifying the amount of the drug to be dispensed. Appellant volunteered the information that the ink blot was occasioned by a leaky fountain pen. As appellant left the store, the pharmacist followed him, observed the license number of his automobile and notified the police. The news of appellant's presence in Pullman was broadcast over the local police network.

Shortly after 6:36 p.m., a Washington State University Campus patrolman noted a vehicle traveling past and beyond "Dead Man's Corner," on the Pullman-Moscow 60-mile an hour highway, at 30 miles an hour. The slow speed and its potential impediment to traffic piqued the officer's interest, and he commenced to follow the vehicle, at which time he discovered that the license number matched the one broadcast over the police radio. At about this time, appellant, who was driving the vehicle, pulled over to the side of the road and the officer pulled in behind him. Appellant was unable to supply either a driver's license or a motor vehicle registration certificate. The officer arrested him for driving without a license or registration certificate and took him to the Pullman police station.

At the police station, appellant's automobile was impounded and placed in the police lot. A police sergeant, who had personally questioned the doctor and the pharmacist, fully informed appellant of his constitutional rights to remain silent and to have benefit of counsel and allowed him the use of the telephone to call his brother. The officer then commenced to interrogate him relative to the narcotic incident. Seemingly by way of explanation, appellant voluntarily produced the prescription he had obtained from the doctor and gave it to the sergeant. The sergeant examined it, noted the ink blot, placed it on a desk, and left the room on other business. He, thereafter, observed appellant doing something to the prescription and upon his return to the room found the prescription missing. Appellant denied knowledge of its whereabouts. Whereupon, the officer, without objection from appellant, picked up appellant's wallet, which was apparently also on the desk, and found the prescription therein. The ink blot on the prescription then appeared to be smudged by erasure marks. The sergeant advised appellant he was under arrest for fraudulently trying to obtain narcotics in violation of state law, confined him, and notified the Whitman County Sheriff. This took place at about 7:30 p.m. At about 8:30 p.m., the sheriff arrived at the police station and, with the chief of police and the police sergeant, searched appellant's vehicle. At this time, miscellaneous articles, tools, and keys were observed in the vehicle. Some of the tools and keys were seized. The next day, August 15, 1962, appellant was formally charged by information with possession of burglary tools. In the meantime, appellant's vehicle was stored in a local garage. Thereafter, appellant's vehicle was searched three times, once following filing of the formal charge on August 15, once on August 16, and finally on a date a few days before the trial commenced. All searches were conducted without benefit of a search warrant.

On August 24, appellant was formally charged, by separate information, with the crime of attempting to obtain a narcotic drug by fraud, deceit, misrepresentation, or subterfuge, and/or alteration of a prescription. Pleas of not

guilty were entered as to each information, and by stipulation of counsel the two charges were consolidated for purposes of trial. Prior to trial, appellant filed in each cause a motion to suppress all evidence obtained by the state by means of any search of his automobile.

At the time of trial, it was agreed between counsel for the state and for the appellant, with the consent of the trial court, that the motions to suppress would be determined upon the basis of the evidence admitted during the trial.

The trial commenced with the attorney for the state advising the jury, in his opening statement, that:

> Sheriff Humphreys and several other officers made the search and they found enumerable devices, tools, drills, machines, what have you, which could be used, and we allege, are burglary tools. These tools were in his possession. A search of the back of the car also revealed a .38 caliber revolver.
>
> . . . .
>
> He told at an interview later on to one of the Treasury agents from the United States Government who was investigating the matter, and who will also testify here, that he was aware the gun was back there, that it was his gun, that he had it in his possession and explained the circumstances under which he had the gun. We will introduce, or attempt to introduce court records and F.B.I. records showing past convictions of burglaries.[1]

These statements were permitted to stand, over the objection and motion for mistrial of defense counsel, upon the basis of the pendency of the motions to suppress and upon the premise that the state was permitted to show burglarious inclinations in connection with the charge of possession of burglary tools.

The state's first witness, the doctor, then explained to the jury that she issued the narcotics prescription in question because she feared violence from the defendant, based upon her suspicion that he was "quite possibly a narcotics addict." Thereafter, and during the presentation of the state's case, the fruits of the searches and seizures were

---

[1]No court records were produced or offered.

introduced in evidence, including a dismantled .38 caliber German Luger pistol, a considerable number of tools and keys, and a bottle of India ink. In addition, the defendant's automobile (which was viewed by the jury) and his fingerprint card were admitted in evidence. In connection with the fingerprint card, the jury was advised that it had been sent to the Federal Bureau of Investigation to ascertain the defendant's criminal record. Later on, in the course of the state's evidence, a four or five-page document was, in the presence of the jury, identified as "a report which we received from the Federal Bureau of Investigation." It was offered in evidence and rejected. At another point in the state's case, a "criminal investigator" for the United States Treasury Department was called and testified he interviewed the defendant while in custody concerning the German Luger and an "alleged" violation of the Federal Firearms Act.

Defendant's counsel interposed objections and motions for mistrial, running to part, if not all, of the foregoing.

At the conclusion of the state's case, the trial court granted defendant's motion to suppress the evidence obtained as a result of the searches and seizures, holding that such searches were not incident to or contemporaneous with a lawful arrest.[2] The trial court then dismissed the charge of unlawful possession of burglary tools, denied defendant's motion for mistrial, and thereafter instructed the jury to disregard the burglary tools charge and all stricken exhibits, testimony, or inferences from such charge.

On appeal, the defendant makes eight assignments of error, essentially directed to the state's opening statement, admission of evidence, and the denial of defendant's motions for mistrial and for new trial. In response, the state contends that dismissal of the burglary tools charge and the court's instructions to the jury with respect thereto cured any error or prejudice that might have arisen under

[2]The state has not cross-appealed or otherwise challenged the trial court's ruling; hence, we are not called upon to review the correctness thereof. As to the searches, however, attention is called to *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 Sup. Ct. 881.

the circumstances. Furthermore, the state argues that defendant waived any claim of error pertaining to denial of his motions for mistrial. This latter contention arises out of the following statement of defense counsel after the trial court had dismissed the burglary tools charge:

> I feel that the ruling on the part of the Court dismissing the C-850 [burglary tools charge] probably cures any problem I had as far as mistrial is concerned on the admission of the weapon and statements of counsel during the course of the opening statement, however, for the record I would like to renew those motions at this time, Your Honor.
>
> THE COURT: They will be denied.

Our review of the record convinces us that the trial court erred in denying defendant's motion for new trial upon the narcotics charge.

■ The basic issue presented in this case is not whether defense counsel tacitly waived his objections or his motions for mistrial, or whether the trial court's instructions effectively struck the burglary tools charge, and its evidentiary derivatives, from the minds of the jury. Rather, the underlying issue is whether the defendant, under all of the circumstances, in fact received a fair and unbiased trial upon the charge which the trial court submitted to the jury. *State v. Johnson*, 60 Wn.2d 21, 371 P.2d 611 (1962).

In *State v. Devlin*, 145 Wash. 44, 51, 258 Pac. 826 (1927), we said:

> In *State v. Pryor*, 67 Wash. 216, 121 Pac. 56, this court said:
>
> "A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles."
>
> It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime

shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not.

In the instant case, the bells of the dismissed burglary tools charge, prior burglary convictions, a four or five-page F.B.I. record, a possible violation of the Federal Firearms Act, and the fruits of the various searches, were so conclusively rung as to effectively preclude their "unringing." The adroitly drawn picture of the defendant's criminal proclivities, sketched upon the backdrop of the medical witness's fear of violence and suspicion of drug addiction, literally dissolved any legalistic curtain based upon the theory that the court's instructions could remove all undue impressions from the jurors' minds. The defendant was irretrievably prejudiced.

■ It is presumed that juries follow the instructions of the court. *State v. Costello*, 59 Wn.2d 325, 367 P.2d 816 (1962). However, where evidence is admitted which is inherently prejudicial and of such a nature as to be most likely to impress itself upon the minds of the jurors, a subsequent withdrawal of that evidence, even when accompanied by an instruction to disregard, cannot logically be said to remove the prejudicial impression created. *State v. Albutt*, 99 Wash. 253, 169 Pac. 584 (1917). As was aptly observed in *State v. Meader*, 54 Vt. 126, 132 (1881):

[T]he school boy uses his sponge to rub out the pencil marks on his slate. He eventually discovers that at some time—he never can tell when—his pencil has *scratched,* and learns to his sorrow, that the ugly evidence of the fact, however vigorously he may apply his sponge, cannot be removed. The question in all cases, is not whether the court, if trying the case, would disregard the obnoxious evidence, but whether the court is *assured* that the jury has done so.

We are not assured that the evidentiary harpoon here inserted could effectively be withdrawn. It was equipped with too many barbs.

■ And, assuming arguendo that counsel for defendant did not adequately preserve his objections, we are

satisfied that the prejudice was of such a nature as to warrant disregarding such a failure. See *State v. Case*, 49 Wn.2d 66, 298 P.2d 500 (1956) for a discussion of the exception to the general rule requiring preservation of objections.

Since the case is being remanded for new trial on the narcotics charge, only one further assignment of error requires comment. Defendant has assigned error to the admission into evidence of the prescription, contending that it was the product of an unlawful search. Aside from the fact that defendant did not timely move to suppress this item of evidence or object to its admission at the time of trial, we are satisfied that the record, as it now stands, reveals that defendant voluntarily surrendered the prescription to the authorities. We find no basis in the evidence which would indicate otherwise.

The judgment of conviction is reversed, and the cause is remanded for new trial upon the charge of attempting to obtain a narcotic drug by fraud.

HILL, FINLEY, WEAVER, OTT, HUNTER, and HALE, JJ., concur.

DONWORTH, J. (dissenting)—Thomas Stanley Suleski, who was convicted of an attempt to obtain a narcotic drug by fraud, appeals from his conviction and the sentence imposed.

In order to understand the basis of appellant's assignments of error, we must consider the rather unusual situation presented by the record.

Appellant was first charged with the possession of burglary tools. About 10 days later, he was charged in a second information with attempting to obtain a narcotic drug by fraud, deceit, misrepresentation or subterfuge and/or alteration of a prescription. By agreement of counsel, appellant, was tried on both charges simultaneously. As will be seen, this procedure gives rise to some complications in passing upon the assignments of error.

Prior to the trial, appellant filed a motion to suppress all evidence obtained by the state by means of an alleged

illegal search of the automobile which he was driving at the time of his apprehension. This motion related solely to the first charge (burglarly tools) and had no bearing on the second charge.

By stipulation of counsel and with the permission of the trial court, it was agreed that the motion to suppress the evidence referred to would be decided by the court on the basis of the testimony admitted at the trial. Thus no affidavits were presented in support of, or in opposition to, the motion to suppress.

When the state rested its case, appellant presented his motion to suppress certain evidence in the absence of the jury. After hearing lengthy arguments by both counsel, the trial court ruled that appellant had been illegally arrested and granted his motion to suppress as evidence all items taken from the automobile which had been admitted in evidence over appellant's objection. These items all related to the burglary tools charge, including a dismantled German Luger pistol, all of which were found in the car.

The trial court then dismissed the first charge against appellant for lack of sufficient evidence to go to the jury, but denied appellant's motion to suppress the prescription for narcotics, which was the basis of the second charge.

At that time, the following colloquy took place between the court and counsel:

Mr. Nuxoll: Thank you, Your Honor, and I will prepare an Order accordingly. Next we move that all of the testimony as it relates to the possession of burglary tools be stricken and the Court instruct the jury to disregard all of that testimony. I think that properly would come in the instructions, but in the event the motion is necessary on this, I would like to make this motion at this time, Your Honor.

The Court: I assume an instruction will be presented to that effect. You may argue that motion now or take it up on objections to instructions, whichever way counsel prefers.

Mr. McMannis: It doesn't matter to me so long as I reserve my objection.

. . . .

Mr. Nuxoll: I feel that the ruling on the part of the Court dismissing the C-850 probably cures any problem I had as far as mistrial is concerned on the admission of the weapon and statements of counsel during the course of the opening statement, however, for the record I would like to renew those motions at this time, Your Honor.

The Court: They will be denied.

Appellant then rested without presenting any testimony. The jury was then instructed by the court, and, after hearing the arguments of counsel, the case was submitted to them on the second charge only. The jury returned a verdict of guilty. Appellant's motion for a new trial was heard and denied and he was sentenced to 5 years' imprisonment in the state penitentiary and to pay a fine of $2,000.

I now state in some detail the proceedings relating to the second charge of attempting to obtain narcotics by fraud, etc., in violation of RCW 69.33.380(1). The facts relating to this charge are substantially as follows:

August 14, 1962, appellant obtained a prescription for dolophine (a narcotic drug) from a doctor in the town of Palouse, claiming that he was suffering from a certain disease. Appellant gave his brother's name instead of his own.[3] Thereafter, he attempted to have the prescription filled at a drugstore in Pullman. Failing to get the prescription filled, because the drugstore did not have that particular drug, appellant proceeded to a second pharmacy in Pullman. The pharmacist at the second store (who likewise did not have the required drug) observed that the prescription seemed to have been altered by an ink spot which obliterated the part of the prescription relating to the amount of the drug to be dispensed. The second pharmacist became suspicious and informed the police of the attempt to use the prescription and also gave the

---

[3]See *State v. Lee*, 62 Wn.2d 228, 382 P.2d 491 (1963).

license number of appellant's automobile, which was an out-of-state license. Later, appellant was stopped by a police officer while driving on the Palouse-Moscow, Idaho, highway for going 30 miles per hour in a 60 m.p.h. zone, and, as the trial court ruled, was illegally arrested.

Appellant's assignments of error No. 1 and No. 5 relate to the German Luger pistol (admitted in evidence in connection with the stricken charge of illegal possession of burglary tools) which would not now be involved in the case had the motion to suppress been considered and granted prior to trial, or had the two charges not been consolidated for trial. Appellant consented to this procedure.

The first assignment of error concerns the prosecutor's reference in his opening statement to a ".38 caliber revolver" that was found in appellant's automobile. The pistol (a German Luger) was among the items of evidence suppressed by the trial court, but appellant claims he could not have a fair trial on the second charge after the erroneous reference to and introduction of this immaterial and prejudicial evidence in regard to the first charge. The state claims the pistol was proper evidence relating to the charge of illegal possession of burglary tools, and, under RCW 9.19.050, it would be material for the purpose of showing an unlawful intent on appellant's part to use the tools.

In my opinion, these two assignments are not available to appellant because, after the trial court had sustained his motion to suppress the items admitted in evidence relating to the burglary tools charge and had dismissed that charge, as shown in the above-quoted portion of the statement of facts, appellant's counsel stated that he was of the opinion that the dismissal of the burglary tools charge cured any problem as to his objection to the admission of the weapon and his motions for mistrial. He nevertheless, renewed those motions for the record without argument and the court denied them.

Furthermore, the trial court instructed the jury very plainly that they were to disregard all evidence relating

to the burglary tools charge. The pertinent portions of the court's instructions are as follows:

In the first instruction the court read the information charging appellant with unlawful possession of burglary tools and then stated

This charge has been removed from your consideration by the Court. You are to wholly disregard it, together with all testimony or evidence relating to it.

The elimination from the jury's consideration of all matters relating to the burglary tools charge was further emphasized in the following two instructions:

Instruction No. 12. You are the exclusive judges of the facts and of the effect and value of the evidence, but you must determine the facts from the evidence produced here in this Court. If any evidence was admitted and afterwards was ordered by me to be stricken, you must disregard entirely the matter thus stricken, and if any counsel intimates by any of his questions that certain facts exist or do not exist, you may disregard any such intimation and must not draw any inference from it. You must not regard such statement of counsel as evidence; provided, however, if counsel for both sides have agreed upon and stipulated to any fact, you are to regard that fact as being conclusively proven; and, if in the trial either party has admitted a fact to be true such admission may be considered by you as evidence in the case.

Instruction No. 16. You are instructed that the charge of possession of burglary tools has been withdrawn from your consideration. All exhibits dealing with that charge have been stricken and are also withdrawn from your consideration. The only exhibits which remain to be considered by you are the following: Plaintiff's Exhibits "A" and "B", and Defendant's Exhibits "1", "2", and "3". You are instructed and admonished to disregard all exhibits and all information obtained from viewing any exhibits which have been stricken. You are further instructed and admonished to disregard all testimony concerning the stricken exhibits, or concerning the charge which has been withdrawn, together with any and all inferences, or insinuations from any such testimony. You shall confine your deliberations solely to testimony

and/or evidence, if any, relating to the charge of attempting to obtain narcotics by fraud.

As indicated above, it was contemplated by both counsel and the trial court that these matters relating to the suppressed items of evidence and appellant's various motions for mistrial in connection with the charge which was dismissed would be covered in the court's instructions to the jury. Appellant took no exceptions to any of the court's instructions.

In the absence of some basic reason for holding otherwise, this court will assume that the jury followed the trial court's instructions. *Regenvetter v. Ball*, 131 Wash. 155, 229 Pac. 321 (1924). Under the record in this case, I am unable to say that the admission of the German Luger pistol in relation to the first charge (later dismissed) was so prejudicial that its effect upon the second charge, if any, could not have been cured by the clear and positive instructions above quoted.

My previous discussion concerning assignments No. 1 and No. 5 makes it unnecessary to discuss assignments No. 2 and No. 3 in any detail. These relate to appellant's motions for mistrial based on the prosecutor's references in his opening statement to appellant's prior convictions for burglary. As above mentioned, appellant's counsel apparently recognized that the trial court's dismissal of the burglary tools charge "probably" cured any basis for a mistrial on the second charge. His motion was then renewed "for the record" and denied by the trial court. As I view it, there was clearly no error in this ruling.

There remains for consideration assignments No. 4 and No. 6, which have to do with the charge of attempting to obtain narcotics in violation of RCW 69.33.380 (1), which reads as follows:

(1) No person shall obtain or attempt to obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written order; or (c) by the concealment of a material fact; or (d) by the use of a false name or the giving of a false address.

As to the charge of attempting to obtain a narcotic drug by alteration of a prescription in violation of the statute above quoted, there was substantial evidence which, if believed by the jury, would support its verdict of guilty.

I concur with the majority in holding that the trial court did not err in denying appellant's motion to suppress the prescription as evidence because the record shows that it was admitted in evidence at the trial without objection. However, as indicated above, I find no adequate ground for reversing and granting a new trial in this case.

Under these circumstances, I think that this court should hold that the trial court did not err in denying appellant's motion for mistrial at the close of the state's case.

Since the majority is remanding this case for a new trial on the second information charging appellant with attempting to obtain a narcotic drug by fraud, deceit, misrepresentation or subterfuge and/or alteration of a prescription, one more matter should be mentioned. The state's first witness, the doctor who issued the narcotics prescription, testified *without objection* that she did so because she feared violence from appellant based on her suspicion that he was possibly a narcotics addict. No error is assigned to the admission of this evidence. Nevertheless, the majority mentions this testimony twice as one of the reasons for granting appellant a new trial. Have we reached the point in criminal appeals where this court is going to consider as reversible error matters which have not been assigned as error by appellant's counsel? Furthermore, on the new trial, is the trial court to consider itself bound to sustain an objection to this testimony of the lady doctor regarding this pertinent reason for her issuing the prescription. I think that the majority should make it clear that it is not prejudging the question of the admissibility of this testimony, if offered on the new trial.

Since I can find no reversible error committed in appellant's trial, I would affirm the judgment and sentence.

ROSELLINI, C. J., concurs with DONWORTH, J.