[No. 31802. Department Two. January 17, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD J. YOUNG, *Appellant*.[1]

[1] Reported in 239 P. (2d) 858.

*Charles O. Carroll* and *F. A. Walterskirchen,* for respondent.

SCHWELLENBACH, C. J.—By information filed by the prosecuting attorney of King county, Richard J. Young and Richard J. Cabral were jointly charged with the crime of robbery. Cabral pleaded guilty to a reduced charge of grand larceny and testified for the state in Young's trial. The jury returned a verdict of guilty, and Young appeals from the judgment and sentence thereon.

F. L. Hamilton is the owner of a service station located on the corner of 12th and Yesler in Seattle. Around 3:15 in the morning of May 2, 1950, J. C. Prewitt, the service station attendant, was working alone. He noticed a 1949 or 1950 Chevrolet panel truck, either dark blue or black, rather shiny, drive in front of the station. He saw someone peer in, but thought nothing of it. The car went around and turned to the right on Yesler, and pulled on around the corner.

A minute or so later a man came in the back door through the "lube" room. He wore a gray double-breasted business suit and a sport shirt. He was hatless, but wore red rubber gloves. He had a gun in his hand. Prewitt started to back up and the robber told him to open the cash register, which he did. When the man saw Prewitt staring at him, he made him lie down on the floor. The robber took the contents

from the till and then left by the same door. After he left, Prewitt got up and called the police. Later that morning, at the police station, Prewitt picked Young out of a lineup as the man who had robbed him.

Silver consisting of halves, quarters and dimes, and about thirty-five dollars in currency, consisting of one five-dollar bill, and the rest in ones, had been taken from the till.

Between three and four o'clock that morning Police Officer Arthur F. Drovetto was driving a prowl car east on Madison street. Over the police radio there came a call stating that there had been a holdup at the Richfield Service Station, located at 12th and Yesler; that a 1949 Chevrolet panel truck was used; that the robber was armed with a gun; and that he wore red rubber gloves. Officer Drovetto proceeded east to 12th avenue. There he noticed a car bearing the description given, which was traveling west on East Madison and which had stopped for a red light. He called over the radio for another car and proceeded across the street. By the time he got to the stopped car, another police car was there. The occupants of the second car had heard the police radio call, had noticed the car in question, and were following it. When they received Officer Drovetto's call, they hurried to assist him. It was about two minutes after they had heard the first radio call that they arrived at 12th and Madison.

Cabral and Young were in the panel truck, Cabral being behind the wheel. Officer Drovetto ordered Cabral out, placed handcuffs on him, telling him he was under arrest, and placed him in the back seat of the prowl car. The other two officers came up on the other side of the truck and did the same thing with Young. The officers then searched the truck. On the front seat, behind the steering wheel, they found a gun. On the floor ·they discovered one five-dollar bill and thirty-one ones; also a pair of red rubber gloves. In the glove compartment was another pair of red rubber gloves and a wrist watch. The prisoners were taken to the police station where they were questioned. At that time Cabral confessed.

The officers testified that they arrested the men as they were taken from the truck and before the search, "on suspicion of robbery," without a warrant of arrest or a search warrant. Officer Drovetto was asked on cross-examination by Mr. Warner: "What law were they violating when you arrested them?" He answered: "They were violating no law." Officer Henaby gave similar testimony. The latter testified: "I believed that this car was the one that was used in the robbery." He also testified that the distance between where the truck was stopped and where the robbery had occurred was about ten blocks; that the interval of time between the radio call and the arrest was very short. He did not attempt to estimate it other than a few minutes. (In this connection it should be noted that Prewitt testified that the robbery occurred about 3:15 a. m.; that Officer Henaby testified that he worked from 7:30 p. m. until 3:30 a. m.; and that Officer Sprinkle testified that he first saw Young in the police station about 3.20 a. m.)

The gun and money were admitted in evidence over defendant's objection on the ground that the arrest was illegal and that there was no foundation for a legal search. Later, a motion to suppress was made on the same grounds, which was denied. A motion, which was also denied, was made to strike the testimony of all police officers on the grounds that the testimony was based on an illegal arrest, search and seizure.

Appellant makes the following assignments of error:

1. In admitting the exhibits on the ground that they were illegally obtained through unlawful search after an illegal arrest.

2. In denying a motion to suppress.

3. In denying motion for a directed verdict.

4. In denying motion in arrest of judgment.

5. In denying motion for a new trial.

6. In giving Instruction No. 1.

7. In giving Instruction No. 11.

8. In not striking the testimony of the police officers.

9. That the evidence was insufficient to support the verdict.

We shall discuss the assignments of error somewhat out of order.

As to assignment No. 9, without discussing any of the evidence, we hold that there was ample evidence to sustain the verdict.

Appellant argues that as to assignments Nos. 4 and 9 there was no proof of venue, in that there was no proof that the crime was committed in King county.

The robbery took place on the corner of 12th and Yesler. Witness Prewitt gave his address as 1818 Weller; Robert Hamilton as 505 East Denny Way; Cabral as 1013 East Republican; Henaby as 7401 Linden Avenue; and F. L. Hamilton, as 505 East Denny Way. The arrests were made by Seattle police officers within two minutes after hearing a Seattle police radio call about the robbery. The superior court for King county, Washington, holding court in Seattle, may take judicial notice of the fact that Seattle is in King county, Washington. There is no doubt as to the venue being properly laid. See *State v. Hardamon*, 29 Wn. (2d) 182, 186 P. (2d) 634.

As to assignment No. 6, instruction No. 1 informed the jury that Young and Cabral had been charged with the crime of robbery; that Young had entered a plea of not guilty and was there alone on trial. The instruction correctly stated the situation. Furthermore, Cabral testified for the state, and it was developed under cross-examination that two months previous to the time of the trial he had pleaded guilty to the reduced charge of larceny and had not yet been sentenced. Considering that testimony, we fail to see how instruction No. 1 could be prejudicial to appellant.

As to assignment No. 7, instruction No. 11 was a stock instruction concerning admissions made by defendant. Robert F. Hamilton, a son of the owner of the service station, testified that, four or five weeks after the robbery, appellant came to the station and asked if the witness knew him. When he said that he did not, appellant stated: "You have a heck of a memory. I'm Dick Young." He then told

the young man's father, F. L. Hamilton, the owner, that he was Dick Young. F. L. Hamilton testified that later, about a month prior to the trial, appellant came back to the station and, in answer to a question as to whether they had a conversation at that time, testified:

"Yes, he came in the station and we were talking, and he just told me that he was sorry that he did it and that he wasn't as tough as he thought he was, he was sorry that he had done anything like that."

Both father and son testified that appellant had never been to the station prior to the robbery. Motion was made, which was denied, to strike the elder Hamilton's testimony in that it had no connection with the case.

Appellant contends that the giving of instruction No. 11 was highly prejudicial in that there were no admissions in evidence in the case; that there was nothing in the testimony of either of these witnesses to connect the statement made by the appellant with this case in any regard. He argues that his statement has no further significance than would the statements of any customer of the gas station, who might make a similar observation as to his name, or the lack of memory on the part of the witness.

Here was a man who had never been to the station before the robbery, who was surprised when the son did not recognize him, and who apologized to the father for what he had done. Considering the entire record, we can conceive of no other matter about which appellant could possibly have been talking to the elder Hamilton than the robbery of his service station. The testimony was properly admitted and the instruction was properly given.

Appellant discusses assignments Nos. 1, 2, 3, 5, 8, and 9 together, contending that, the arrest being illegal, the subsequent search was also illegal, being in violation of Art. I, §§ 7 and 9 of the Washington state constitution, and of the fourth and fifth amendments to the constitution of the United States.

The rule is set forth in *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841, as follows:

" . . . But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . .

"It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged."

Appellant relies strongly on our decision in *State v. Miles*, 29 Wn. (2d) 921, 190 P. (2d) 740. There the defendants were charged with two offenses, (1) burglary by entering and robbing the offices of Dr. Charles R. Rogers, located on the corner of Third and James in Seattle; and (2) possession of burglar tools. The jury acquitted them of the burglary charge and found them guilty of possession of burglar tools. The circumstances of their arrest and the seizure of evidence were as follows. About 2:45 a. m. on the morning of July 15, 1946, two police officers, while riding in a police car, received a radio message that a "stick-up" had been committed by two *young men* at the Feek Dairy Lunch at Third Avenue and Seneca, in Seattle. (Defendants were about forty years of age.) About 3:30 the same morning the officers arrested defendants while they were standing on the sidewalk near an automobile owned by Kast, after which defendants and the car were searched, and the burglar tools found. The officers did not have warrants of arrest or search warrants. The robbery of Dr. Rogers' office was not discovered until several hours after the arrest. At the trial one of the officers testified that they arrested the defendants for "suspicion of robbery." We held:

"The officers who arrested the appellants had no reasonable grounds to believe that appellants had committed a robbery. Officer Mahoney testified that appellants were arrested 'for suspicion of robbery.' All the information he

and his brother officer had was a radio message that two young men had robbed a dairy lunch. That information would certainly not have been sufficient to justify the issuance of a search warrant, or a warrant of arrest, had the officers applied for one. It stands to reason that no wider latitude is allowed in arresting without a warrant, than in securing one. . . .

"Did the officers have a right to search the automobile belonging to appellant Kast? At the time of their arrest, appellants were standing upon a Seattle sidewalk, as was their right under the constitution and laws of this country. They were not violating any law of this state, or ordinance of the city of Seattle. The only reason given upon which the state attempts to justify its right to search the automobile, was as an incident to the arrest of appellants. Having concluded that the arrests were unlawful, it follows that the search of the car was unlawful."

█ We feel that the facts in this case, although on the surface they may appear to be similar, are in fact, dissimilar. Here, the officers were notified over the police radio that a service station had been robbed at 12th and Yesler, and that a 1949 Chevrolet panel truck had been used. Within a few minutes of the call, and approximately ten blocks from the scene of the crime, officers in two different prowl cars, each acting independently of the other, one following and one approaching, converged on Young and Cabral. It would have been very improbable, at that time in the morning, for another 1949 Chevrolet panel truck to have been in that particular vicinity. Under the circumstances the officers would have been derelict in their duty if they had not made the arrest.

We do not wish to recede one iota from our holding in the *Miles* case. It is the duty of courts to protect citizens from unwarranted, arbitrary, illegal arrests by officers of the law. But we should not permit our zeal for protection of constitutional rights to blind us to our responsibility to other citizens who have the right to be protected from those who violate the law. In these days of modern transportation, when robbers have fast "get-away" cars, police must also have fast cars. Those fast cars must be equipped with radios, in order that law violators may be apprehended be-

fore they can make their escape, provided of course, that the officers have reasonable grounds to believe that the persons whom they arrest have committed the felony complained of. Regardless of the language used by the officers in their testimony, we are convinced that the arrest was made upon more than mere suspicion. A mere suspicion denotes lack of fact or evidence. Here the arrest was based upon reasonable grounds, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty of the reported felony. The arrest was legal and the subsequent search valid.

The judgment and sentence is affirmed.

HILL, HAMLEY, FINLEY, and OLSON, JJ., concur.

[1]Reported in 239 P. (2d) 854.