[Nos. 40249, 40250. Department One. September 25, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP GRANT GIBSON *et al.*, *Appellants.**

Consolidated appeals from judgments of the Superior Court for King County, No. 47049, Edward E. Henry, J., entered March 20, 1968.

*Jack A. Richey,* for appellants (appointed counsel for appeal).

*Charles O. Carroll* and *John E. Nelson,* for respondent.

WEAVER, J.—Defendants, found guilty of second degree burglary, appeal from their judgments and sentences. Their single assignment of error presents one issue:

Did the trial court err when it admitted into evidence

*Reported in 459 P.2d 22.

certain articles taken from the inside and from the locked trunk of an automobile?

August 25, 1967, Michael Millet, the night manager of the Burgermaster Drive-In at 3042 Northeast 45th, Seattle, closed the drive-in about 1 a.m. He extinguished most of the exterior and some of the interior lights. While he and Miss Kelley, another employee, were cleaning the drive-in, he received a mysterious telephone call. Although the telephone call was never connected to the subsequent burglary, it alerted him to the possibility of something unusual. Subsequently, Mr. Millet noticed an automobile drive back and forth in front of the drive-in; it drove into a parking lot across the street.

When Mr. Millet left with Miss Kelley in her car, the suspicious automobile followed them for a short distance. The car was red and bore Oregon license plate ORL 168.

Mr. Millet returned to the drive-in to pick up his car. He noticed garbage boxes, normally at the side of the drive-in, sitting on the back steps to block sight of the back door from the outside. He returned to the home of Miss Kelley and they telephoned the police. Returning to the building, they saw two men dragging boxes inside the building.

Mr. Millet and police officers returned to the drive-in about 4 a.m. The front door was locked; there was a hole in the glass of the rear door. Defendants were apprehended in the building. Phillip Gibson was wearing gloves, although this fact is disputed. The defendants carried no personal identification. Defendant Norman Gibson testified, in the absence of the jury:

> I was exercising my privilege of silence and the police officers didn't know my name, they had no way of knowing my name, and about over a hour later one of the police officers came up to me and said: "Are you Norman or are you Phil" and I still remained silent. So he says: "We found your billfold in your car. The car is registered to you." That is the way I knew that the car had been searched and moved.

The police found acetylene and oxygen tanks and other paraphernalia used for metal cutting in front of the safe.

As part of the burglary investigation, an officer immediately began a search of the area for the automobile described by Mr. Millet. It was discovered a half hour later in a driveway behind a fence and shrubbery on private property about 100 feet from the drive-in. The car was red; it carried a *California* license plate XRL 168.[1]

The officer searched the car. It was registered in the name of Norman Gibson, one of the defendants. On the rear seat he found a sport jacket, visible from outside the car, containing two wallets. The wallets held identification pictures of the two defendants as well as money belonging to them. In the trunk he found a crowbar and a quantity of dirt on the floor. At trial, a chemist testified that the dirt in the trunk matched the dirt scraped from the oxygen tank found inside the burglarized premises at the time defendants were arrested.

Defendants testified in their own defense. Phillip Gibson denied wearing gloves. Norman Gibson denied ownership of the oxygen and acetylene tanks. The jury did not believe their explanation of their presence in the drive-in building at 4 a.m.

We do not agree with defendants' contention that the contents of the automobile were inadmissible in evidence. The validity of defendants' arrest is not challenged. The only challenge is to the validity of the search of defendants' automobile made about 30 minutes after defendants were on their way to the police station.

■ In the light of the Fourth Amendment the test is whether the search was reasonable. This depends upon the facts, circumstances, and exigencies of the situation confronting the police officers. *State v. Palmer*, 73 Wn.2d 462, 438 P.2d 876 (1968).

■ From Mr. Millet's description of the suspicious movements of a red automobile shortly before the apprehension of defendants, the officers had probable cause to believe that the automobile described may have belonged

---

[1] We take judicial notice that 1967 Oregon license plates carried gold letters on a blue background; California, yellow letters on a black background.

to defendants—whose identity had not yet been determined —and used by them to transport the oxygen and acetylene tanks to the scene of the burglary. Although the possibility of defendants using the car to escape vanished with their arrest, there was always the possibility of an undisclosed accomplice driving the car away.

The automobile played an integral role in the execution of the crime for which defendants were arrested. It constituted evidence which the police had the right to take into custody in their investigation of the burglary and to examine it. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *see also State v. McCoy,* 249 Ore. 160, 437 P.2d 734 (1968). The search of the car was intimately connected with the crime for which defendants were arrested. There was a distinct nexus between the automobile and defendants' criminal behavior.

This fact distinguishes the instant case from *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964), and *State v. Riggins,* 64 Wn.2d 881, 395 P.2d 85 (1964). In *Preston* defendant was arrested for vagrancy. After defendant has been booked at the police station, his automobile was searched. In *Riggins* defendant was stopped for a traffic infraction. The officer recognized Riggins as a parole violator. His automobile was searched the next day. In neither case was there any connection between the charge for which defendants were arrested and the charges brought against them by reason of the search of the automobiles.

In the instant case, the search of defendants' car was not unreasonable because the evidence disclosed was intimately connected with the crime for which defendants were arrested; hence, the articles disclosed by the search were admissible in evidence.

The judgments and sentences are affirmed.

HUNTER, C. J., HAMILTON and McGOVERN, JJ., and JOHNSEN, J. Pro Tem., concur.

October 31, 1969. Petition for rehearing denied.