[Nos. 522-3; 523-3.    Division Three.    November 8, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD CHARLES MORSETTE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. BEVERLY IRENE LICHT, *Appellant*.

*Fred Shelton,* for appellant Richard Charles Morsette, (appointed counsel for appeal).

*Blythe B. Caw* (of *Caw & Caw*), for appellant Beverly Irene Morsette (appointed counsel for appeal).

*William D. Aiken, Special Prosecuting Attorney,* for respondent.

EDGERTON, J.—Convicted of the crime of second-degree burglary, Richard Charles Morsette and Beverly Irene Morsette appeal. Defendants' principal assignments of error are: It was error (1) to admit in evidence articles obtained in what they allege was the illegal search of an automobile; (2) to deny defendants' motion to suppress evidence regarding photographic identification of the defendant Charles Morsette; (3) to deny defendant Beverly Irene Morsette's motion for a directed verdict; (4) to admit as evidence the trousers allegedly worn by Charles Morsette during the burglary although the exhibit was withdrawn prior to submitting the case to the jury; and (5) to deny defendants' motions for a new trial.

On August 15, 1971 Edward Emry and his wife, on their way home from a banquet, stopped about 1 a.m. at their store in Othello. On entering, Mr. Emry, sensing someone was in the building, called out and, hearing something drop, switched on some lights. Two figures were seen departing. Mrs. Emry later identified one as Charles Morsette. Sending his wife to the police station, Emry crossed the street to summon help and was there joined by a neighbor. Together they saw a light Pontiac parked near the store, pull away from the curb, proceed west on Pine Street and, after a momentary stop, turn onto Broadway. A policeman arrived but did not stop when told the direction the Pontiac had taken. He pursued and several blocks farther on overtook, stopped and arrested the defendants on suspicion of burglary.

The defendants were taken to the Othello Police Station and booked. The Pontiac was taken to a garage and locked up. Investigation at the store revealed that the safe had been tampered with, and that the burglars had entered and left through a hole in the rear wall of the building. Two police officers then proceeded to the garage and there searched the Pontiac without a warrant. They found tools, gloves, a penlite, an automatic pistol with a live shell, a cartridge clip, and a ball peen hammer with fragments of mortar and brick on it. The hammer's handle had been seen by the officer when making the arrest. These items were photographed by the police and at the trial admitted in evidence over defendants' objection.

First, defendants assert the search of the automobile in which they were apprehended violated their constitutional rights under the fourth amendment to the federal constitution, and that to admit the product of that search in evidence as exhibits was error. The state, conversely, attempts to sustain the search on the ground that it was a constitutionally permissible "inventory search" in the style of *State v. Montague*, 73 Wn.2d 381, 438 P.2d 571 (1968), and *Cooper v. California*, 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967).

It is not necessary for us to decide whether the search in the instant case was a constitutionally permissible inventory search as claimed by the state, or is a constitutionally condemned fishing expedition as urged by the defendants, for we find that there was probable cause plus sufficient exigent circumstances to justify the search. *Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). *See* S. R. Shapiro, *Validity, Under Federal Constitution, of Warrantless Search of Automobile—Supreme Court Cases*, 26 L. Ed. 2d 893.

Although an automobile "is not a talisman in whose presence the Fourth Amendment fades away and disappears," (*see Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.

Ed. 2d 564, 91 S. Ct. 2022 (1971)) "there is a constitutional difference between houses and cars." *Chambers v. Maroney, supra* at 52; *cf. Carroll v. United States, supra.*

With knowledge of the burglary, and having been told by eyewitnesses that a Pontiac had just then driven away from the scene, and the course it had taken, the officers had sufficient cause to pursue, stop it and arrest the occupants. There was also probable cause to search the auto for possible weapons, burglary tools or stolen goods since the police had good reason to believe the occupants were burglars fleeing the scene of their crime. This search could have been made at the time of and incident to the arrest. However, this was not the only way to make the warrantless search. Under the exigent circumstances of the case it was proper to remove the auto, sequester it in a garage and there make the search after preliminary examination of the burglarized premises. Among the exigent circumstances the officers learned the auto was registered in the name of a Seattle lawyer and not that of the driver, and so, perhaps he, the lawyer, could have made demand for its immediate delivery to him. In that sense, even after its removal to the garage the car was still mobile and, if moved, its contents might have been lost forever if the officers were required to obtain a warrant for the search. Having probable cause to make the arrest and to search the car for burglar's tools, weapons or plunder, under the exigencies of the situation, the search was properly performed at a subsequent time and different place.

The second claim of error goes to a photographic identification procedure used by the state.

Mrs. Emry testified that on the morning of the burglary she was handed a packet of 10 or more photographs at police headquarters and left to examine them. After viewing them alone she selected one as being the picture of one of the burglars she had seen in the store. Defendants contend this testimony should not have been allowed but should have been suppressed. The photograph itself was not offered in evidence; however, Mrs. Emry positively

identified the defendant Charles Morsette as the man she had seen in the store. The governing rule is stated in *State v. Cantrell,* 81 Wn.2d 213, 214, 500 P.2d, 777 (1972). It is as follows:

We also held [in *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972)] that the validity and reliability of the identification procedure is a question of fact for the jury's determination and will be reversed on appeal only where the facts establish that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification," *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), and that the identification procedures set forth in *State v. Ferguson, supra* [3 Wn. App. 898, 479 P.2d 114 (1970)], and *State v. Lane, supra* [4 Wn. App. 745, 484 P.2d 432 (1971)], were ideal procedures, not constitutionally mandated ones.

Certainly in this case there is nothing to give rise to any "substantial likelihood of irreparable misidentification," or anything indicating an "impermissibly suggestive" photographic identification. The motion to suppress was therefore properly denied.

Third, defendant Beverly Irene Morsette assigns error to the denial of her motion for a directed verdict at the close of the state's case, asserting the evidence was insufficient to prove her an aider and abettor in the burglary. From the time immediately following the burglary Mrs. Morsette was observed to be in the auto driven by the defendant Richard Charles Morsette, and never to leave it until pursued and stopped by the officers. The circumstances created a jury question as to whether she knew of the commission of the offense and participated in some manner in it. The assignment of error is without merit.

Next, defendants charge that it was error to admit exhibit 13 in evidence and later withdraw it from jury consideration. Exhibit 13 was a pair of trousers which witnesses said were worn by the defendant Charles Morsette on the night of the burglary when, in fact, they belonged to and were worn by another man. Extensive testimony by the

state's criminalist expert definitely linked the trousers with the crime by microscopic and other examinations. These tests showed materials on these trousers comparable to, and having the same chemical and microscopic properties, as the aggregate and mortar at the site of the burglars' entry. The exhibit was admitted in evidence and at the close of the day the state rested. The next morning the prosecutor, having meanwhile discovered the mistake, moved to reopen for the purpose of withdrawing exhibit 13. He advised the court:

> The purpose for this motion is as follows, namely, that subsequent to the time of the testimony by Mr. Anderson and subsequent to the time of the testimony by Sargeant Roth of the Othello Police Department, I was advised by Sargeant Roth that the trousers purporting to be those of Mr. Morsette are, in fact, not Exhibit No. 13, but are, in fact, presently in the custody of the Othello Police Department. The tag on Plaintiff's Exhibit No. 13 shows the name of Robert E. Moore. I would like the record to further show that the testimony of Mr. Anderson, however, did pertain to evidence found on the trousers of Mr. Morsette that had been delivered to him by Sargeant Roth and that in sum and substance, in delivering the articles from the Othello Police Department to the courtroom, Sargeant Roth has admitted to me that through inadvertence and mistake he did bring to the courtroom the trousers of a Mr. Robert E. Moore rather than the trousers of Mr. Morsette. For that reason, in fairness to the defendant and so there will be no confusion to the jury, I move that Plaintiff's Exhibit No. 13 be withdrawn . . .

The motion was granted and the court instructed the jury:

> Now, ladies and gentlemen, there has been a little delay this morning that you expect usually when a case is about ready to be wound up, and several motions were taken care of in your absence which has caused this delay. Now there are a few things that the court will have to instruct you. Exhibit No. 13, the trousers that Mr. Roth is holding, have been withdrawn as an exhibit. Exhibit No. 13 has been withdrawn as an exhibit. You are not to consider any evidence that Mr. Anderson gave or anyone else pertaining to the trousers. That is to be

excluded. You are to wipe that out of your mind altogether as far as that goes because there has been some little mistake that occurred here in the court, and the court has ruled that exhibit No. 13 can be withdrawn and that will be eliminated from the evidence entirely and you are not to consider it in any manner whatsoever. That is not to concern you in any way.

Both defendants then rested without adducing evidence. Although the court instructed the jury to forget the trousers, that they were no longer in evidence, that no evidence concerning them was to be considered, the instruction could not erase from their minds the fact that trousers identified as those of the defendant Charles Morsette contained materials coming from the hole in the building where the burglars gained entrance and egress. This clearly linked him with the burglary and must have had highly prejudicial effect. To think that the jury could have forgotten is a strain on credulity and highly dubious.

■ As noted by our Supreme Court in *State v. Albutt,* 99 Wash. 253, 259, 169 P. 584 (1917):

> While ordinarily an error in the admission of evidence is remedied by an instruction directing the jury to disregard it, the rule is by no means of universal application. Each case must rest upon its own facts, and in some instances the error may be so serious that an instruction, no matter how framed, will not avoid the mischief.

We conclude, as did the Washington Supreme Court in *State v. Miles,* 73 Wn.2d 67, 71, 436 P.2d 198 (1968) that the testimony of the officer and expert in this case "was so prejudicial in nature that its effect upon the minds of the jurors could not be expected to be erased by an instruction to disregard it." Further, any doubt as to whether the error was cured must be resolved in favor of the accused. *State v. Albutt, supra.*

Finally, we have reviewed other assignments of error raised by defendants and find them to be without merit and to involve issues which will not confront the court on a retrial.

The judgments are reversed and the cases are remanded for a new trial.

Munson, C.J., and Green, J., concur.