STATE of Maine

v.

Robert MOWER.

Supreme Judicial Court of Maine.

Nov. 2, 1979.

---

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

James S. Horton, Richard J. Relyea, III (orally), Bangor, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY, NICHOLS and GLASSMAN, JJ.

NICHOLS, Justice.

In a jury-waived trial in Superior Court (Penobscot County), the Defendant, Robert Mower, was convicted both of burglary, 17–A M.R.S.A. § 401 (Supp.1978), a Class C offense; and of theft, 17–A M.R.S.A. § 353 (Supp.1978), a Class D offense.

Appealing that judgment of conviction to this Court he asserts (1) that the court below erred in admitting testimony concerning a warrantless search of a motor vehicle, and (2) that the evidence adduced at trial was insufficient to support the judgment against him.

We affirm the judgment of the Superior Court.

The facts pertinent to the warrantless search can be briefly summarized.

At 1:44 A.M. on September 3, 1978, Officer Richard Bennett of the Bangor Police Department, while on routine patrol, received a dispatch advising him to be on the lookout for a medium-sized blue converted school bus/camper which had been observed shortly before at the scene of a break and theft of cigarettes at the warehouse of Superior Paper Products. Thirty-eight minutes later and at a point about one mile

from the warehouse, the officer stopped a bus of that description.

When the driver, identified at trial as the Defendant, refused to open the bus door and to produce for the officer an operator's license and registration certificate, Officer Bennett opened the bus door himself. Thereupon a passenger seated across from the Defendant produced a registration certificate. The Defendant, however, refused to hand it down to the officer who was obliged to climb the three steps leading to the driver's seat and interior of the bus in order to read the registration certificate. He directed his flashlight into the back of the bus. There he saw cartons of cigarettes stacked behind the driver's seat. At this point, the officer placed the Defendant under arrest. He searched the bus, using his flashlight, found two people sleeping in the back, and observed what was later inventoried as 365 cartons of cigarettes bearing Superior Paper Products markings.[1]

■ At trial in January, 1979, the Defendant moved to suppress Officer Bennett's testimony concerning the warrantless search at the scene of the stop.[2] On appeal to this Court he urges that the trial court erred in finding that the officer had probable cause to search the bus for evidence without a search warrant.

■ As in any case where a defendant seeks to exclude evidence seized in a warrantless search, we start with the general rule that a warrantless search is *per se* unreasonable. *State v. Barclay*, Me., 398 A.2d 794, 797 (1979). If the evidence seized in a warrantless search is not to be excluded, it must be established that the search falls within one of the exceptions to that general rule. *See State v. Dunlap*, Me., 395 A.2d 821, 824 (1978). The burden is on the State to prove by a preponderance of the evidence that an exception exists. *State v. Heald*, Me., 314 A.2d 820, 829 (1973).

In denying the Defendant's motion to suppress testimony as to the observations which the officer made after he entered the bus, the presiding justice expressly found:

. . . [T]he nature of the vehicle and its description as a converted school bus was of sufficient rarity to warrant the officer in believing the vehicle moving on the streets of Bangor at that hour of the night was involved in the burglary.

The factors enumerated by the presiding justice are of the type recognized in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), as vitiating the unreasonableness of a warrantless search. These factors constitute the basis for the exception known as exigent circumstances coupled with probable cause,[3] or more particularly, the familiar "automobile exception."

■ In holding that the search was reasonable under the "automobile exception" we find that on the basis of the information transmitted by the dispatcher, Officer Bennett could have reasonably believed that a search of the bus would disclose items that would aid him in establishing the commis-

---

1. The officer testified that he was able to see cartons of cigarettes behind the driver's seat from his position on the ground outside the bus. The Defendant contended that a three-foot panel located behind the driver's seat obstructed from ground level view the entire interior of the bus. Because we find that the police officer had probable cause to search the bus, we agree with the presiding justice's finding that it makes no difference whether he saw the cigarettes before or after he entered the bus.

2. The Defendant's attorney took a considerable chance in not pressing a motion to suppress before trial. M.R.Crim.P. 41(e) mandates that a motion to suppress be made before trial unless specifically designated circumstances war-

rant a departure from that rule. Failure to make this motion in timely fashion may be deemed a waiver of the party's right to object at trial to the legality of the search and seizure. *State v. Bishop*, Me., 392 A.2d 20, 22 (1978). In the case before us the motion to suppress was heard during trial as a matter of judicial discretion and not as a matter of right.

3. We have recently reviewed the principles underlying probable cause to search and the exigent circumstance exception to the Fourth Amendment's warrant requirement. *See State v. Hassapelis*, Me., 404 A.2d 232, 237 (1979); *State v. Barclay*, Me., 398 A.2d 794, 797–798 (1979).

sion of a crime. Under like circumstances we have recently recognized the existence of probable cause to search. *State v. Hassapelis*, Me., 404 A.2d 232, 237–238 (1979); *State v. Carter*, Me., 391 A.2d 344, 346 (1978).

Given the existence of probable cause to search, Officer Bennett was entitled to make an immediate search of the bus. *State v. Hassapelis, supra; Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ The Defendant argues that the automobile exception does not apply because the bus, which he used as his home, falls within the Code definitions of "dwelling place" and "structure."[4] His theory overlooks the fact that the automobile exception is based on the distinction between *mobile* vehicles and *fixed* structures. *Carroll v. United States, supra* at 153, 45 S.Ct. 280. The converted school bus here is a mobile vehicle.[5]

■ Under the circumstances of this case, Officer Bennett's brief search with his flashlight through the back of the bus was completely reasonable in scope. Aside from the mobility of the bus, which in itself justified the immediate search, eyewitness reports of the burglary indicated that three persons were seen in the vicinity of the bus at the scene of the crime. The officer was able to see from the ground only the Defendant and one passenger. In order to assure himself that no hostile persons were present, we conclude that he was justified in immediately searching the back of the bus. *Cf. United States v. Miller*, 145 U.S. App.D.C. 312, 315, 449 F.2d 974, 977 (D.C. Cir. 1970).

We move on to the second issue pressed by the Defendant as he challenges the sufficiency of the evidence upon which he was convicted in Superior Court.

In proving its case the State relied heavily upon the inference permitted under 17–A M.R.S.A. § 361(2) (Supp.1978), which provides:

> Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter or of chapter 27 shall give rise to a presumption that the defendant is guilty of the theft or robbery of the property, as the case may be, and proof that the theft or robbery occurred under circumstances constituting a violation of section 401 also shall give rise to a presumption that the defendant in exclusive possession of property recently so taken is guilty of the burglary.

As used in this statute, the word "presumption," we have held, is synonymous with the words "permissible inference." Thus certain constitutional problems are avoided. *State v. King*, Me., 379 A.2d 131, 134 (1977).

The Defendant argues that the State failed to prove "exclusive" possession because three other persons were present in the bus and because the State failed to prove that he operated or controlled the bus.

■ A person can be in "exclusive" possession jointly with others. Exclusive possession does not mean sole possession. *State v. Gove*, Me., 289 A.2d 679, 681 (1972). Although mere presence in an automobile containing stolen items is insufficient to demonstrate exclusive possession, *State v.*

---

4. 17–A M.R.S.A. § 2(10) states:
   "Dwelling place" means a structure which is adapted for overnight accommodation of persons, or sections of any structure similarly adapted. . . .
   17–A M.R.S.A. § 2(24) states:
   "Structure" means a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles and other conveyances whose primary purpose is transportation of persons or property *unless such vehicle or conveyance, or a section thereof, is also a dwelling place.* (emphasis added)

5. This one-time school bus differs markedly in its mobility from the wheelless "mobile home" which, like a small house, is capable of being transported from place to place but which has been more or less permanently located.

*Dall,* Me., 305 A.2d 270, 272 (1973), constructive possession coupled with an exercise of dominion, control or right is sufficient to permit the statutory inference of exclusive possession. *State v. Bachelder,* Me., 403 A.2d 754, 761 (1979), *State v. Barrett,* Me., 256 A.2d 666, 668 (1969).

■ The Defendant here was in constructive possession of the stolen cigarettes in that they were found in the bus which he used as his home. Further, he admitted at trial that he was the driver of the bus at the time of the stop. Thus, inferentially, he was also in control of the bus's contents. *State v. Dall,* Me., 305 A.2d 270, 272 (1973); *State v. Poulin,* Me., 277 A.2d 493, 500 (1971).

On the basis of this evidence, the presiding justice reasonably concluded that the Defendant was in exclusive possession of the stolen cigarettes.

■ As a final issue the Defendant argues that he raised a reasonable doubt as to his own participation in the burglary. The Defendant's case consisted of his own testimony and that of the passenger seated beside him in the bus. They testified that they spent the entire day and evening before the burglary at a lounge in Bangor and that they did not leave the lounge until 2:00 A.M., approximately 15 minutes after the police officer had received the dispatch concerning the burglary. They attempted to shift suspicion onto this passenger's brother, asserting that the brother borrowed the bus at about 11:30 P.M. on the night of the burglary. The Defendant denied having any knowledge of the presence of the cigarettes in the bus prior to being stopped. The factfinder below was free to weigh the credibility of the Defendant's testimony. *State v. Price,* Me., 406 A.2d 883 (1979).

The record contains ample evidence to support the judgment of conviction.

The entry will be:

Appeal denied.

Judgment affirmed.