[No. 4988-1-II.   Division Two.   August 16, 1982.]

THE STATE OF WASHINGTON, *Appellant*, v. RICHARD RODRIGUEZ, *Respondent*.

*David Bruneau, Prosecuting Attorney,* and *Kenneth Cowsert, Chief Deputy,* for appellant.

*S. Brooke Taylor,* for respondent.

PETRICH, A.C.J.—The State of Washington appeals from an order suppressing evidence. The issue on appeal is whether evidence seized during a consensual search preceded by an illegal detention must necessarily be suppressed. We believe that in the event the consent was voluntary and untainted by the prior detention, the evidence seized should not be suppressed. We therefore reverse and remand to the trial court to determine whether the consent of the defendant was free of the taint of the illegal detention and voluntarily made.

■ The trial court's unchallenged findings which are verities on appeal, *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981), establish the following:

The defendant was en route from California to Port Angeles, traveling by air, and was apparently observed in the Seattle–Tacoma Airport by Drug Enforcement Administration (DEA) agents. A DEA agent telephoned Clallam County Sheriff Steve Kerns while defendant was en route from Seattle to Port Angeles, and told him only that defendant had been observed and that he matched their profile of a drug courier.[1] The DEA agent did not disclose to Sheriff Kerns what factors comprised the profile, nor any other facts which formed the basis for the agent's conclusion. Sheriff Kerns observed defendant at the Port Angeles airport talking on the telephone, approached the defendant, asked for identification, displayed his sheriff's badge, and proceeded to interrogate defendant. Sheriff Kerns asked the defendant to accompany him outside to where his patrol car was located, at which time two other uniformed sheriff's deputies arrived on the scene. In the presence of all three officers, defendant consented to a search of his suitcase. As a result of the search, a substance was found which was believed to be cocaine, and defendant was placed under arrest.

The trial court concluded that the established facts do

---

[1]In an effort to control drug traffic, law enforcement officials have developed a drug courier profile for airline travelers, described as an "informally compiled abstract of characteristics thought typical of persons carrying illicit drugs." *United States v. Mendenhall,* 446 U.S. 544, 547 n.1, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). The general profile is explained in *United States v. Ballard,* 573 F.2d 913, 914 (5th Cir. 1978):
> (a) unusual nervousness; (b) no luggage or very limited luggage; (c) possession of an unusually large amount of cash, especially when in bills of small denominations; (d) unusual itinerary, taking circuitous routes from cities known to be source cities for narcotics, such as flying to New Orleans from Los Angeles by way of St. Louis; (e) arriving from a known narcotic source city; (f) paying for an airline ticket in currency of small denominations; (g) purchasing a one–way ticket; (h) use of an alias; (i) use of a false telephone number on an airline reservation; (j) placing a telephone call immediately upon arrival at the airport; and (k) travel by a known narcotics trafficker.

not support a claim of probable cause to arrest, nor do they establish a reasonable and articulable suspicion that the defendant was engaged in a criminal activity so as to justify his detention. The court ruled the stop was illegal and suppressed the seized evidence. While finding that the defendant consented to the search, the court specifically declined to resolve disputed facts which bore on the voluntariness of the consent and whether the consent was free of the cloud of the illegal detention.

On appeal, the State claims that the defendant was not "seized" within the meaning of the Fourth Amendment, citing the lead opinion in *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980); that if seized, the seizure was based upon the reasonable and articulable suspicion that the defendant was engaged in criminal activity; and that the search was with the free and voluntary consent of the defendant.

■ The issue of whether defendant was seized within the meaning of the Fourth Amendment is not now subject to review. Our examination of the record discloses that this issue was never presented to the trial court. Issues not raised before the trial court will not be considered for the first time on appeal. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 617 P.2d 704 (1980); *Barnes v. Seattle Sch. Dist. 1*, 88 Wn.2d 483, 563 P.2d 199 (1977).

■ We agree with the trial court that the State did not establish probable cause to arrest or even a reasonable and articulable suspicion that the defendant was engaged in criminal activity. The State did not present the testimony of the DEA agent. The trial court might have reached a different conclusion if the DEA agent had been produced as a witness and provided the necessary factual basis for the sheriff's action. But as in *State v. McCord*, 19 Wn. App. 250, 576 P.2d 892, *review denied*, 90 Wn.2d 1013 (1978), the officer initiating the request for assistance did not testify. The base assertions received by Sheriff Kerns that the defendant met an undefined "drug courier profile," the observation of the defendant on the telephone, and defend-

ant's nervous appearance are simply not enough to establish probable cause for arrest or a reasonable and articulable suspicion that the defendant was engaged in criminal activity. *Reid v. Georgia*, 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980).

■■ Even though the defendant was seized illegally within the meaning of the Fourth Amendment, we do not believe that the evidence seized should have been suppressed so long as the search was authorized by a free and voluntary consent to search untainted by the illegal seizure. It may be true that the claimed consent to search and uncovering of the evidence would never have occurred without the illegal detention of the defendant. This would not necessarily require suppression. The proper focus in such a situation was articulated by the United States Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 487–88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963):

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

Voluntariness of a consent to search is a question of fact to be determined by considering the totality of the circumstances of the consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *State v. Shoemaker*, 85 Wn.2d 207, 533 P.2d 123 (1975). The State has the burden of demonstrating that the consent to search is voluntary. *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968); *State v. Shoemaker, supra*. In the case before us the court, while finding the defendant consented to the search, declined to resolve factual matters which bore on the voluntariness of the consent

or the effect of the illegal arrest on the consent.[2]

Evidence presented by the State at the suppression hearing indicated that on at least two occasions defendant consented to the search; that defendant was advised that he need not consent; that no threats were made to the defendant and nothing was said that a search warrant had been issued or could be obtained; and finally that defendant himself opened the bag to permit the search. Nevertheless, the trial court ruled at the conclusion of the State's case. Accordingly, there was no necessity for the defense to present any evidence.

The Supreme Court in *State v. Shoemaker, supra,* ruled that a search by consent was proper notwithstanding the possible illegality of the original entry or arrest of the defendant. Two other cases are illustrative of this point. In *Bretti v. Wainwright,* 439 F.2d 1042 (5th Cir.), *cert. denied,* 404 U.S. 943, 30 L. Ed. 2d 257, 92 S. Ct. 293 (1971), the court upheld a consensual search in spite of the claimed illegality of the arrest, stating that warning of the defendant's rights helps insure that the consent is free and voluntary and untainted by the possible illegality of the arrest. In *United States v. Troutman,* 590 F.2d 605 (5th Cir. 1979), a consensual search was upheld even though the search followed an illegal detention where the defendant freely consented after being advised of his right to allow or refuse to allow the search.

We believe the court erred in refusing to resolve the factual issues bearing on the defendant's consent to search. We reverse and remand to the trial court to conduct a rehearing for the limited purpose of determining whether the defendant's consent, which the court determined was made, was in fact voluntary and free of the taint of the illegal detention. If the trial court should so find, then the evidence should not be suppressed.

---

[2]The court specifically declined to resolve whether defendant was advised of his right to refuse consent or whether he was advised that the sheriff could obtain a search warrant.

Reverse and remand.

PETRIE and WORSWICK, JJ., concur.

Reconsideration denied September 3, 1982.

Review denied by Supreme Court November 22, 1982.