[No. 6306-9-II.   Division Two.   February 13, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
T. DONOHOE, *Appellant.*

*Albert Armstrong III,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *James M. Peters, Deputy,* for respondent.

REED, A.C.J.—Michael Donohoe was convicted for pos-

session of stolen property in the second degree. He appeals, challenging the trial court's denial of his motion to suppress evidence seized after a warrantless search. We affirm.

On January 30, 1982, at approximately 1:30 a.m., Vancouver police officers Johnson and McNicholas answered a call to investigate a vehicle prowl. They were met at the scene by a friend of the victim, who informed the officers that a blue and white Chevrolet Blazer occupied by two young men had been seen in the vicinity of the victim's vehicle around the time the theft probably had occurred. Nearby, the policemen noted fresh tracks left by a wide tire with a mud or snow traction pattern. The officers were given a list of the stolen property, of a value sufficient to classify the theft as a felony. A description of the suspect vehicle and the stolen property was broadcast over the Vancouver police radio.

Between 2:30 and 3 a.m. that same morning, another Vancouver policeman observed two young men leave a blue and white Chevrolet Blazer with Idaho plates parked near a Vip's Restaurant. The officer could see that the vehicle contained numerous articles of property. Although no positive identification was made at that time, some of the items were similar to those stolen.

An hour and a half later, around 4:25 a.m., Officer Johnson observed a blue and white Chevrolet Blazer, bearing Idaho plates and equipped with wide snow tires, parked some four to six blocks from the crime scene. Noting that the two young white male occupants were watching him "somewhat intently," Johnson stopped his patrol car next to the vehicle without using its emergency equipment. Kenneth Nilson stepped from the Blazer to meet Officer Johnson at the patrol car, at which time the policeman noted the odor of intoxicants about the person and breath of Nilson. When Officer McNicholas arrived at the scene, defendant Michael Donohoe also left the Blazer. Officer Johnson had determined that Nilson was not free to go and told him that he wanted to search the Blazer. After an ambiguous conversation concerning Nilson's willingness to

consent,[1] a search was conducted and various items of stolen property were discovered. Nilson and Donohoe were given their *Miranda* warnings. A further search revealed additional stolen property.

On appeal, the defendant argues that under the fourth amendment to the United States Constitution there was insufficient cause for an investigatory stop[2] or a warrantless search. We disagree.[3] A search of an automobile is reasonable under the Fourth Amendment if there is probable cause to search, *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 583, 102 S. Ct. 2157 (1982); *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 549, 45 S. Ct. 280, 39 A.L.R. 790 (1925). Probable cause to search, in turn, requires circumstances within the knowledge of the seizing officer that create a reasonable belief the vehicle contains an item subject to seizure. *Carroll v. United States, supra; United States v. Freitas,* 716 F.2d 1216, 1220 (9th Cir. 1983). We need not prolong this opinion by listing those circumstances supporting probable cause here as we only would be repeating the facts heretofore enumerated. Suffice to say they are sufficient.

Binding precedent has found far fewer circumstances to warrant a "reasonable belief" that a vehicle contained evidence of a crime. *Colorado v. Bannister,* 449 U.S. 1, 66 L. Ed. 2d 1, 4, 101 S. Ct. 42 (1980) (probable cause to search vehicle where occupants of car matched description of suspects and the officer saw in an open glove compartment

---

[1]The suppression judge concluded there was no valid consent search.

[2]Our holding that probable cause existed at the outset for either an arrest or a search makes unnecessary any analysis of the lesser standard for an investigatory stop under the Fourth Amendment.

[3]The trial court concluded that the investigatory stop of the vehicle was proper and that the "discovery of the stolen property gave rise to probable cause" thereby justifying a more intensive search. Although the reasons given by the trial judge for denying suppression of the evidence were incorrect, we can affirm for the correct reasons. *State v. Carroll,* 81 Wn.2d 95, 101, 500 P.2d 115 (1972); *State v. Davis,* 29 Wn. App. 691, 697, 630 P.2d 938, 17 A.L.R.4th 53, *review denied,* 96 Wn.2d 1013 (1981).

items similar to those stolen); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 425–26, 90 S. Ct. 1975, *reh'g denied,* 400 U.S. 856 (1970) (where light blue station wagon with four occupants had been seen in vicinity of robbery, police had probable cause to search similar car seen to contain clothing like that worn by robbers); *State v. Gibson,* 76 Wn.2d 814, 816–17, 459 P.2d 22 (1969), *cert. denied,* 399 U.S. 912 (1970) (police action "reasonable" where vehicle parked in vicinity of crime scene was searched because it was similar in color to that of car seen cruising area earlier, although its license plate differed from the description); *State v. Morsette,* 7 Wn. App. 783, 785–86, 502 P.2d 1234 (1972) (searched car in vicinity that was similar to "light Pontiac" seen pulling away from parking space near burgled store). The instant search is indistinguishable from those upheld by both federal and Washington decisions.[4] Here, the known circumstances gave police a "reasonable belief" the Blazer contained items from the vehicle theft and therefore made the search of that vehicle unobjectionable under the Fourth Amendment.

At oral argument defense counsel for the first time asserted a right to exclude the evidence under article 1, section 7 of the Washington State Constitution. This provi-

---

[4]A sample of similar cases from other jurisdictions also supports our finding of probable cause to search. *United States v. Evans,* 447 F.2d 129, 130–32 (8th Cir. 1971) (probable cause to search car where similar green 1968 Ford fastback with snow tires and bent bumper was seen leaving an alley behind burgled post office), *cert. denied,* 404 U.S. 1047 (1972); *Hancock v. State,* 368 So. 2d 581, 584–87 (Ala. Crim. App. 1979) (upheld later search of car matching 1968 Oldsmobile Cutlass without headlight that passed police while en route to pharmacy robbery); *People v. De La Cruz,* 153 Cal. App. 3d 180, 200 Cal. Rptr. 149, 155–57 (1984) (later search of known burglar's car upheld where its tires and owner's shoes matched tracks at burglary scene); *Williams v. State,* 167 Ga. App. 42, 306 S.E.2d 46, 47–48 (1983) (where speaker wires protruded from trunk, officer properly searched car similar to Buick without taillight seen driving past burgled house); *State v. Mower,* 407 A.2d 729, 730–32 (Me. 1979) (converted bus searched after similar vehicle seen in vicinity of warehouse just before burglary discovered); *State v. Adams,* 55 N.C. App. 599, 286 S.E.2d 371, 373–74 (1982) (searched car stopped near crime scene where it resembled older white Ford seen leaving lot across street from robbed store).

sion requires an "automobile search" to be supported by both probable cause *and* a showing of further exigent circumstances making the acquisition of a telephonic warrant impracticable. *State v. Ringer,* 100 Wn.2d 686, 701–03, 674 P.2d 1240 (1983). However, defendant is precluded from raising the additional state requirement by his failure to object on this ground at the suppression hearing or to brief this issue on appeal. *State v. Ferguson,* 100 Wn.2d 131, 138, 667 P.2d 68 (1983); *State v. Fortun,* 94 Wn.2d 754, 756, 626 P.2d 504 (1980); *State v. Pleasant,* 38 Wn. App. 78, 81, 684 P.2d 761 (1984); *State v. Hayes,* 37 Wn. App. 786, 790, 683 P.2d 237 (1984). Although this court can choose to consider for the first time on appeal "manifest error affecting a constitutional right", RAP 2.5(a)(3), a defendant can waive such rights by his action or inaction in the trial court.[5] 3 W. LaFave, *Search and Seizure* § 11.1, at 474 (1978). Here defendant not only neglected to raise the issue at the suppression hearing or in his brief on appeal, but when counsel first asserted the state constitution at oral argument he admitted he consciously had forgone the article 1, section 7 claim at trial placing his hopes exclusively on the Fourth Amendment. Defendant must accept the consequences of this affirmative choice. *See Henry v. Mississippi,* 379 U.S. 443, 13 L. Ed. 2d 408, 414–15, 85 S. Ct. 564 (1965); *State v. Valladares,* 99 Wn.2d 663, 664 P.2d 508 (1983).

In any event, if Donohoe properly had raised the state constitution, we would uphold the search as one incident to a lawful arrest, another well recognized exception to *both* the Washington and federal warrant requirements. The validity of a search incident to a lawful arrest is recog-

---

[5]Because a defendant can receive complete constitutional protection against the use of illegally obtained evidence through superior court suppression hearing procedures, and because the rights afforded by these constitutional provisions are not "trial rights" or part of the "truth–finding function", they can be waived. *State v. Valladares,* 99 Wn.2d 663, 671–72, 664 P.2d 508 (1983). Also, because law enforcement personnel had a right to rely on previous Washington decisions employing the broader standards of the Fourth Amendment as interpreted by the federal courts, *State v. Ringer* should not be applied retroactively to Donohoe's case. *In re Gunter,* 102 Wn.2d 769, 771–72, 689 P.2d 1074 (1984).

nized under both the state and federal constitutions. *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981); *State v. Ringer, supra.* Such a search may precede the arrest if probable cause to arrest exists from the outset. *Rawlings v. Kentucky,* 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556, 2564 (1980); *State v. Smith,* 88 Wn.2d 127, 138, 559 P.2d 970, *cert. denied,* 434 U.S. 876 (1977). In the instant case, there was probable cause to arrest for the theft because the circumstances confronting the police before the search warranted a cautious man in believing the accused was guilty. *Gerstein v. Pugh,* 420 U.S. 103, 112, 43 L. Ed. 2d 54, 64, 95 S. Ct. 854 (1975); *State v. Scott,* 93 Wn.2d 7, 11, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980).

Again, binding precedent compels our finding of a search incident to a lawful arrest. *Chambers v. Maroney, supra; State v. Gluck,* 83 Wn.2d 424, 425–27, 518 P.2d 703 (1974) (after learning a tavern had been robbed, police arrested occupants of a car they earlier had seen pull away from the tavern); *State v. Nolan,* 69 Wn.2d 961, 962–65, 421 P.2d 679 (1966) (arrested occupants of car matching description of white and gray 1955 Oldsmobile seen parked near scene of burglary after police observed within it items similar to those stolen); *State v. Hoffman,* 64 Wn.2d 445, 446–49, 392 P.2d 237 (1964) (owner of maroon Buick convertible arrested where a similar car was seen parked in front of a burgled tavern, defendant had been driving in area at time of burglary and was fully clothed when confronted early that morning at his home); *State v. Young,* 39 Wn.2d 910, 917–18, 239 P.2d 858 (1952) (arrest of occupants of dark 1949 Chevrolet panel truck valid under federal *and* state constitutions where a similar truck had driven through gas station moments before robbery).[6] Indeed, the Blazer as

---

[6]Decisions from other jurisdictions again sustain our conclusion that probable cause to arrest was present. *United States v. Troutman,* 458 F.2d 217, 220–21 (10th Cir. 1972); *Delespine v. Beto,* 418 F.2d 871, 872 (5th Cir. 1969), *cert. denied,* 397 U.S. 1030 (1970); *United States v. James,* 496 F. Supp. 284, 286–87 (W.D. Okla. 1977); *Hamilton v. North Carolina,* 260 F. Supp. 632, 633–35 (E.D.N.C.

equipped in this case "was defendants' Achilles' heel; the improbability of two such cars carrying four such occupants at that time of night in this section of [the city] is manifest." *State v. Kohler,* 70 Wn.2d 599, 605, 424 P.2d 656 (1967), *cert. denied,* 389 U.S. 1038 (1968). *See also State v. Young,* 39 Wn.2d at 917.

Because the search of the Blazer was valid under the Fourth Amendment both as a search incident to arrest and under the "automobile exception," no warrant was required. The evidence was properly admitted.

Affirmed.

LANGSDORF, J. Pro Tem., concurs.

PETRICH, J. (dissenting)—Although the evidence adduced at the suppression hearing in the present case arguably would support different and stronger findings of fact with regards to probable cause, we must accept the facts as reflected in the findings prepared by the State and entered by the suppression judge. *State v. Poirier,* 34 Wn. App. 839, 841, 664 P.2d 7 (1983). Accordingly, the following facts are pertinent to the issue of probable cause: (1) a theft of property from a vehicle in a felonious amount; (2) a witness having observed a blue and white Chevrolet Blazer occupied by two young men in the vicinity of the victim's vehicle at the approximate time of the theft; (3) fresh tire tracks at the approximate location where the Blazer vehicle had been which indicated a wide tire with a mud or snow pattern; (4) parked at a nearby restaurant was a blue and white Blazer vehicle containing a large quantity of items, none of which were positively identified as being stolen;[7]

---

1966), *aff'd,* 382 F.2d 296 (4th Cir. 1967); *Traylor v. State,* 439 So. 2d 178, 181–82 (Ala. Crim. App. 1983); *People v. Myshock,* 116 Mich. App. 72, 321 N.W.2d 849, 850 (1982); *State v. Kyles,* 257 N.W.2d 378, 380 (Minn. 1977).

[7]The majority states that when first observed by the police, the Chevrolet Blazer contained some items similar to those stolen. The trial court did not make such a finding. It is true that a fishing pole had been seen in the Blazer and a fishing pole was one of the stolen items. However, the officer who eventually

and (5) when approached by police at 4:24 a.m., four to six blocks from the crime scene, two young male occupants of a blue and white Chevrolet Blazer, with Idaho plates and mud or snow tires, watched the officer "somewhat intently."

There is no doubt that the time, the geographic proximity and the other circumstances here created a suspicion of a relationship with the earlier vehicle theft, but a hunch is not enough for probable cause. *State v. Thompson,* 93 Wn.2d 838, 842, 613 P.2d 525 (1980). Nor is mere presence at the scene of criminal activity, without more, sufficient probable cause to arrest. *State v. Broadnax,* 98 Wn.2d 289, 302, 654 P.2d 96 (1982).

In the present case, the findings of fact adopted by the trial judge are silent as to: (1) whether the Blazer vehicle was stopped or parked at the crime scene; (2) whether the occupants exited their vehicle at the crime scene; (3) whether the street and vicinity of the crime scene were isolated or received heavy vehicular use; (4) whether police identified contents from outside the Blazer vehicle as stolen property.

From the findings of fact, there is no nexus between the crime and the two suspects except for their presence at a time uncertain on a street where a vehicle theft occurred within an uncertain time frame.

The present case is different than the factual pattern where the suspects are actually observed in the criminal act and/or fleeing therefrom in an identified automobile. *See State v. Scott,* 93 Wn.2d 7, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980); *State v. Todd,* 78 Wn.2d 362, 474 P.2d 542 (1970); *State v. Kohler,* 70 Wn.2d 599, 424 P.2d 656 (1967), *cert. denied,* 389 U.S. 1038 (1968); *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970). Also missing here is the police officer's knowledge of the suspects' criminal proclivities, *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964), and the observation by police of an occupied vehicle suspi-

---

searched the vehicle acknowledged that the prior view did not disclose "anything definitely connecting them with the specific crime."

ciously parked near an isolated crime scene. *State v. Gluck,* 83 Wn.2d 424, 518 P.2d 703 (1974). And, although the occupants' nervous behavior may bolster the facts supporting probable cause, *State v. Kohler, supra,* nervousness has been held not enough to establish probable cause. *State v. Rodriguez,* 32 Wn. App. 758, 762, 650 P.2d 225, *review denied,* 98 Wn.2d 1005 (1982).

The facts as found by the trial court below support an intrusion to detain and question, but do not give rise to probable cause to arrest. The facts here are less persuasive than those existent in *State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984), which the Supreme Court held not sufficient to establish probable cause to arrest. There, a police officer responded to a silent burglar alarm at a residence. The officer spotted a car parked in front of the residence which appeared empty, but as the officer drove closer, the headlights went on and the car moved away from the curb. The driver was detained and a search conducted. Result, no probable cause to arrest.

In light of the absence of a finding that a lawful arrest occurred prior to the search on minor in possession charges, and absent probable cause to arrest for theft until after the intrusion, I would not allow the State "to put the cart before the horse." The State in my view has failed to carry its burden of proving the search incident to a lawful arrest exception to the warrant requirement.

The automobile exception, *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), does not alter the right to search in this case. It is clear that when officers have probable cause to believe a vehicle contains contraband, they may stop and search that vehicle without complying with the constitution's general warrant requirement. *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *State v. Southard,* 32 Wn. App. 599, 602, 648 P.2d 504 (1982). Here, Officers Johnson and McNicholas did not possess sufficient objective facts to believe the Blazer vehicle contained stolen property.

Conclusion of law 3 states that the objective facts gave the officers "a well–founded suspicion." This is not sufficient to justify an arrest or an intrusion into the vehicle. The trial court was not satisfied that probable cause existed until *after* the discovery of the stolen property. The later discovery of stolen articles does give rise to probable cause, but the unlawful intrusion had already occurred. As stated in *State v. Broadnax,* 98 Wn.2d at 299, "one cannot search first to gather evidence to establish the probable cause needed to justify the initial intrusion. Otherwise, the requirement of probable cause to arrest would be turned upside down."

I would reverse.

Review denied by Supreme Court April 19, 1985.